**UNELKO CORP., Plaintiff–Appellee,**

v.

**PRESTONE PRODUCTS CORP., Defendant–Appellant.**

No. 96–3694.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1997.

Decided June 16, 1997.

Seymour Rothstein (argued), Allegretti & Witcoff, Christopher J. Renk, J. Pieter van Es, Banner & Witcoff, Chicago, IL, for Plaintiff–Appellee.

Damon E. Dunn (argued), Levin & Funkhouser, Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUMMINGS and FLAUM, Circuit Judges.

POSNER, Chief Judge.

This trademark contract case turns on the meaning of the word "marketed." Unelko, the plaintiff, produces a water repellent for application to car windows, which it sells under its federally registered trademark "Rain–X" in a bright yellow plastic bottle with a black cap. The bottle is packaged in a black box, but is sometimes displayed without the box. Unelko has been marketing Rain–X since 1972, and has advertised it extensively. It has become the leading brand of water repellents for use on vehicular glass.

In 1994 Prestone, the defendant, announced that it would be introducing its own water repellent for vehicular glass, which it called "Rain √" and planned to sell in a bright yellow plastic bottle with a black cap, packaged in a dark box. Unelko sued, charging federal trademark infringement and related forms of unfair competition because of Prestone's choice of a misleadingly similar trade name and trade dress. The parties settled that suit before trial, resulting in its dismissal without any action by the court. In the settlement agreement, Prestone agreed to abandon the name Rain √, to change the color of the black cap and of the dark box, and—the nub of the present case—"if Prestone packages any Prestone brand

water repellent product in yellow containers, Prestone agrees and warrants that each individual container will be marketed to Prestone's customers *as packaged within an individual box*" (emphasis added).

■ When, shortly afterward, Prestone began depicting the yellow bottle containing its renamed water repellent in magazine advertising directed to dealers in automotive products, Unelko brought the present suit in the same court in which it had brought the trademark case, and the case was assigned to the same judge. It is a diversity suit for breach of the settlement agreement. The breach of an agreement to settle a federal suit does not, despite its origin, arise under federal law unless the federal court has retained jurisdiction to enforce the terms of the settlement, as it did not do here (the agreement itself states that its interpretation and enforcement are to be governed by the law of Illinois). *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381–82, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994); *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir.1994). That is why Unelko had to establish diversity of citizenship in order to be able to bring this suit in federal court.

■ Contending that the word "marketed" in the settlement agreement clearly includes "advertised," Unelko moved for summary judgment. The lawyers for the two parties appeared before the district judge to establish a schedule for the pretrial proceedings in the case. After learning what the dispute was about, the judge, the same one, as we said, who had had the original trademark case, questioned the need for a full-scale summary judgment proceeding. He said, "Why don't you give an oral argument? What's so complicated about it [the meaning of 'marketed']?" Unelko's lawyer replied, "I don't think there is anything complicated," and Prestone's lawyer chimed in, "I don't either, if you're inclined to hear oral argument." The judge suggested that each side submit a five-page brief and that the case be scheduled for a 20–minute oral argument. The lawyers agreed, the briefs were filed, the argument was held. The parties and the judge agreed that if he thought the meaning of the disputed clause in the settlement

agreement unambiguous he should resolve the parties' dispute forthwith, but that if he thought it ambiguous there would have to be an evidentiary hearing. Prestone did not ask for an opportunity to introduce extrinsic evidence to show, in accordance with the doctrine of latent ambiguity, that the agreement, even if it *seemed* unambiguous, was actually ambiguous, perhaps because it employed words having a meaning in the relevant trade different from their ordinary meaning. See, e.g., *Meyer v. Marilyn Miglin, Inc.*, 273 Ill.App.3d 882, 210 Ill.Dec. 257, 652 N.E.2d 1233, 1238 (1995); *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572, 574–76 (7th Cir.1995) (applying Illinois law). Prestone did, it is true, cite a latent-ambiguity case to the district judge, *Metalex Corp. v. Uniden Corp.*, 863 F.2d 1331, 1335–36 (7th Cir.1988), but cited it for the proposition that words in a contract must be interpreted in their context. Context is not a synonym for extrinsic evidence. Some context is furnished by other parts of the contract itself, besides the clause in dispute; some is furnished by the circumstances of the contract, which may be evident without need for presenting evidence. Prestone did not want to present evidence; any argument that it might make for using extrinsic evidence even if the settlement agreement seems clear on its face has therefore been waived.

■ Prestone argued that "marketed" as used in the settlement agreement means "shipped" and "customers" means "dealers," so that all Prestone agreed to was that if it continued to sell its water repellent in yellow bottles it would ship them to its dealers individually boxed rather than loose. The dealers would be free to take the containers out of the boxes and display them; and Prestone would be free to advertise the bottles without the boxes. So understood, the clause would have little significance unless this type of automotive product is typically sold to the consumer unboxed, which no one has suggested it is. We know from the settlement agreement that both parties were selling their product in individual boxes rather than loose. So under Prestone's interpretation the clause in question required it to do no

more than it would be doing anyway—shipping its water repellent to the dealers in individual boxes. Required nothing, in other words.

■ The district judge rejected Prestone's interpretation, ruling that "marketed" unambiguously includes "advertised," and so granting summary judgment for Unelko. Our review of an issue of contract interpretation is plenary when the only evidence placed in the record is the written contract itself. *Schering Corp. v. Illinois Antibiotics Co.*, 62 F.3d 903, 909 (7th Cir.1995); *PSI Energy, Inc. v. Exxon Coal USA, Inc.*, 17 F.3d 969, 971 (7th Cir.1994); *United States Liability Ins. Co. v. Selman*, 70 F.3d 684, 687 (1st Cir.1995).

The color of Prestone's "Rain √" bottle was one of Unelko's complaints in the trademark dispute that gave rise to the contract that we are interpreting, and so the natural interpretation of the clause in contention is that it requires Prestone to hide, as it were, the yellow bottle (if it insists on continuing to use the same color as Unelko) in a box that the agreement required be changed so that it no longer resembles Unelko's box. This objective, already but unavoidably weakened by the dealer's ability to remove the bottle from the box before putting it on sale, would be defeated altogether if Prestone could show the yellow bottle in advertising without the disambiguating box. And in advertising directed to dealers, this mode of display might be taken by them as an invitation to display the bottle outside of the box. Prestone points out that Unelko's interpretation would forbid an advertisement that depicted Prestone's water repellent being applied to a windshield or other car window, since it could not be applied without the bottle's being taken out of its box. But the rebuttal is weakened by the absence of any suggestion that Prestone has ever employed such advertising, or desires to do so.

Prestone might complain that in making these points we are going beyond the written contract, thereby tacitly conceding that it is ambiguous—so Prestone should have a right to present extrinsic evidence to disambiguate it. But it is Prestone itself that has gone outside the contract, for example in asking us to consider what it deems the unacceptable consequence of its not being allowed to portray in an advertisement a hand pouring its water repellent from the bottle onto a windshield. The analytical difficulty is that the line between intrinsic and extrinsic evidence of contractual meaning is obscure in both theory and practice. Meaning never resides wholly in the words or sentences of a writing. An extensive linguistic and cultural apparatus is required to interpret even the simplest sentence. Prestone implicitly agreed that the intrinsic evidence—that is, the evidence the district judge and we are free to consider even though there was no evidentiary hearing—includes not only the words of the clause in dispute but also the rest of the settlement agreement (which includes a history of the trademark dispute out of which it grew), the physical appearance of the plaintiff's and defendant's products, the texts of the advertisements claimed to violate the agreement (which were attached to the complaint), and the predictable consequences of the competing interpretations. If consideration is allowed to range over all these materials, but no others, Unelko wins, because Prestone's interpretation is unreasonable in making a nullity of the "packaged within an individual box" clause. *National Diamond Syndicate, Inc. v. United Parcel Service, Inc.*, 897 F.2d 253, 262 (7th Cir.1990) (applying Illinois law).

Prestone argues that the *Random House Dictionary of the English Language* 1177 (2d ed.1987), which we may assume, without attempting to decide (a decision hardly within our competence), is as good as any other dictionary for these purposes, does not define the verb "to market" as including "to advertise." But one of the meanings of "to market" that this dictionary does give is "sell," and advertising is part of selling in a broad sense. Also, the dictionary lists as synonyms for the verb "market" "vend," "merchandise," and "peddle," and the first two are again broad enough to include "advertise." And the entries for "marketing" include "the total of activities involved in the transfer of goods from the producer or seller to the consumer or buyer, including *advertising*, shipping, storing, and selling" (emphasis added). But this is a sideshow. A dictionary is often and

here useless for deciding a contract dispute. *Rhone–Poulenc Inc. v. International Ins. Co.,* 71 F.3d 1299, 1304 (7th Cir.1995); cf. *Nix v. Hedden,* 149 U.S. 304, 306–07, 13 S.Ct. 881, 882, 37 L.Ed. 745 (1893); *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.1945) (L.Hand, J.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 7.10, pp. 256–57 (1990). It is just a sampling of usages, with no pretense to exhaustiveness or to sensitivity to the full range of nuances that context lends to meaning. As it happens, the *Random House Dictionary's* failure to include "advertise" under "market" cannot have been a *deliberate* rejection of the meaning that Unelko seeks to impress upon the latter word; for modern dictionaries aspire to be descriptive rather than prescriptive, and it is altogether standard English to say of a producer of consumer products that it markets its products to its customers through (for example) door-to-door solicitation and point-of-sale advertising. Put differently but equivalently, "to market" is the verb form of the noun "marketing" defined in accordance with the entry for the latter word that we quoted.

■ Prestone seeks a remand to enable it to present evidence of the negotiating history of the settlement agreement and specifically the likely outcome of Unelko's trademark suit had it been tried, since a settlement agreement is likely to reflect rather than alter the balance of advantages that the parties would have faced had they pressed on to trial. *Lockwood v. Wolf Corp.,* 629 F.2d 603, 610 (9th Cir.1980); cf. *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir.1996); *Mars Steel Corp. v. Continental Illinois National Bank & Trust Co.,* 834 F.2d 677, 682 (7th Cir.1987). Prestone is entitled to do this, however, only if the agreement remains ambiguous after consideration of *only* those materials deemed intrinsic to the contract; and it does not, as we have seen. Were it not for the waiver we mentioned earlier, Prestone could also seek a remand to do *some* of this evidence-adding in order to show that the contract, even if it seems clear, really is not. We say "some" because the only extrinsic evidence that may be used to create rather than to resolve a contractual ambiguity is *objective* evidence. *Ahsan v. Eagle, Inc.,* 223 Ill.Dec. 107, 678 N.E.2d 1238 (Ill.App.1997); *Home Ins. Co. v. Chicago & Northwestern Transportation Co.,* 56 F.3d 763, 768–69 (7th Cir.1995) (Illinois law); *AM International, Inc. v. Graphic Management Associates, Inc., supra,* 44 F.3d at 575–76 (same). This standard prevents a party from presenting self-serving testimony about what he meant when he agreed to the particular words in the contract.

Examples of evidence that Prestone might have presented in the district court in an effort to show that the settlement agreement is not as clear as it seems would be evidence that Unelko's trademark suit was very weak, so that Unelko's settling for purely nominal relief against the color of Prestone's containers would be plausible; that the color of the bottles was not one of the concerns that motivated the suit and hence it would not have influenced the relief bargained for in the settlement agreement; that Prestone employs the kind of "action" ads for its product that require that it be unboxed (because it is being poured or sprayed or otherwise used rather than merely exhibited); or that all of Prestone's advertising is directed to dealers rather than to the consuming public (presumed more easily fooled). We doubt that Prestone would have gotten far with such evidence. One has only to compare the name and trade dress of "Rain √" with that of Unelko's well-established "Rain–X" to recognize that Unelko had a powerful trademark claim an essential element of which was indeed "Rain √"'s yellow bottle; and Prestone knows whether it has ever run an "action" ad for its water repellent.

AFFIRMED.