Richard BOTHELL and Justin Bothell, d/b/a Atlas Technologies, and Atlas Bimetals Labs, Inc., a Washington corporation, Plaintiffs,

v.

HITACHI ZOSEN CORPORATION, a Japanese corporation; Northwest Technical Industries, Inc., a Washington corporation; K. Shimotsuma Associates, Inc., a foreign corporation, Defendant.

No. 99–5642 FDB.

United States District Court, W.D. Washington at Tacoma.

May 19, 2000.

William T. Bisset, Hughes Hubbard & Reed, Los Angeles, CA, Parker C. Folse, III, Susman Godfrey, L.L.P., Seattle, WA, for defendant KSA, Inc.

Daniel Gandara, Vandeberg Johnson & Gandara, Seattle, WA, for defendant Hitachi Zosen.

Floyd L. Newland, Karr Tuttle Campbell, Seattle, WA, for plaintiff Bothell d/b/a Atlas.

Ann W. Speckman, Seattle, WA, for defendant NW Tech.

ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND MOTION TO STAY ACTION PENDING ARBITRATION AND GRANTING PLAINTIFF'S MOTION TO REMAND COMPLAINT TO STATE COURT

BURGESS, District Judge.

MEMORANDUM AND ORDER

This matter comes before the Court upon the motion of Defendant K. Shimotsuma Associates, Inc. ("KSA") seeking a stay of the instant case, pending the completion of arbitration, pursuant to 9 U.S.C. § 3, which states:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

KSA moves the Court to compel arbitration pursuant to 9 U.S.C. § 206, which states:

"A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement

at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement."

KSA is joined in its motions to stay proceedings and compel arbitration by co-defendants Hitachi Zosen Corporation ("Hitachi") and Northwest Technical Industries ("NTI").

In addition, Plaintiffs Richard Bothell and Justin Bothell, d/b/a Atlas Technologies, and Atlas Bimetals Labs, Inc. ("Atlas," collectively) move the Court for an order remanding the instant case to the Superior Court of the State of Washington for Jefferson County and for attorney fees in bringing this motion, or in the alternative, to dismiss all claims which the Court finds are subject to arbitration under the Convention on the Recognition and Enforcement of Foreign Arbitration Awards ("New York Convention," or "Convention").

### Background

Plaintiff Atlas entered into an agreement to manufacture patented specialized flanges for use by defendant Hitachi Zosen Corporation (Hitachi) in ultra high vacuum facilities under construction in Japan. Defendant KSA acted as Hitachi's United States representative in connection with the parties commercial dealings, and defendant Northwest Technical Industries, Inc. (NTI) acted as Atlas' supplier. KSA asserts that it acted as a representative of Hitachi and signed documents in that capacity.

Plaintiff Atlas asserts that based on its November 1995 proposal to produce the flanges, the parties reached an oral agreement confirmed by its December 15, 1995, letter to Hitachi and KSA. This letter provided in relevant part:

"**Further Terms & Conditions:** All further terms and conditions are embodied in the proposal of November 9th."

Defendants Hitachi and KSA contend they sent Atlas three separate purchase orders, each containing references to "General Terms and Conditions" indicated to be a separate attachment to the purchase orders. The "General Terms" attachment ostensibly provided in relevant part:

### Article 26. Arbitration

"All disputes, controversies or differences which may arise between the Purchaser and the Vendor, out of or in relation to or in connection with the Contract or any breach thereof, shall be finally settled by arbitration in Tokyo, Japan in accordance with 'the Rules of Conciliation and Arbitration of the International Chamber of Commerce.' The award rendered by such arbitration shall be final and binding upon the parties hereto. If any dispute should arise between the parties, the Vendor shall continue its performance as required under the Contract."

Defendants assert that the agreement for Atlas to produce flanges came from the exchange of purchase orders. Conversely, Atlas contends that the purchase orders were an attempt at modification of terms of their previous contract embodied in their letter of November 15, 1995.

Plaintiffs allow that they received the purchase orders but without the "General Terms and Conditions" attached to each, and thus thought the phrase referred to Atlas' own "Further Terms & Conditions" phrase used in its December 15, 1995, letter.

Defendants assert that a valid enforceable arbitration agreement exists between Atlas and Defendants as a result of the "General Terms & Conditions" clause ostensibly attached to each purchase order.

In August 1999, plaintiff Atlas filed the instant complaint in the Superior Court of the State of Washington for Jefferson County, asserting breach of contract by Hitachi for failing to pay for products which were delivered upon construction.

On December 8, 1999, defendant KSA, with co-defendants Hitachi and NTI con-

senting, removed the instant complaint from Jefferson County Superior Court to federal district court pursuant to 9 U.S.C. § 205 of the Convention which states in relevant part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending . . .

## Discussion

Plaintiff Atlas moves the Court to remand the instant case to state court on the grounds that there is no valid arbitration agreement between Atlas and the defendants, as the Convention does not apply, thus making Defendants' removal pursuant to the Convention improper. Plaintiffs' motion crystalizes the issue before the Court of whether a valid arbitration agreement exists between the parties to the suit. Thus, I will consider the opposing parties' motions together.

### I.  Jurisdiction to Adjudicate Arbitration Controversy

First, I must address whether this Court has jurisdiction over this matter pursuant to the Federal Arbitration Act (FAA). Defendant KSA asserts that the FAA controls the Court's analysis of its motion to stay proceedings and compel arbitration "and authorizes the Court to direct that such an arbitration is held, as agreed, in Tokyo, Japan, before the International Chamber of Commerce in Tokyo." [KSA Mem.Supp.Mot. Compel at 3.]

The Supreme Court has repeatedly held that the Federal Arbitration Act "was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate.'" *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 109 S.Ct. 1248,

1253, 103 L.Ed.2d 488 (1989) (quoting *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 219–220, 105 S.Ct. 1238, 1241–1242, 84 L.Ed.2d 158 (1985)). While it is true the FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution" that "applies with special force in the field of international commerce", *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985), the FAA "does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner *provided for in [the parties'] agreement.*'" *Volt,* 109 S.Ct. at 1253. (quoting 9 U.S.C. § 4) (emphasis added). See also *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719–720 (9th Cir.1999) ("Under Section 4 of the FAA, the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue. Therefore, the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms.") (citation and footnote omitted).

Here, pursuant to the FAA, the Court has jurisdiction to compel any valid arbitration agreement between the parties. But while KSA asserts that the Court need only enforce the arbitration clause as provided in Hitachi's "General Terms and Conditions for Purchasing", Atlas avers that there never were discussions or negotiations regarding arbitration, much less an arbitration agreement between Atlas and Defendants. Thus, in order to determine if the Court has jurisdiction over this matter I must determine whether a valid arbitration agreement exists.

### II.  Intent to Contract for Arbitration

"When we are asked to compel arbitration of a dispute, our threshold inquiry is whether the parties agreed to arbitrate." *Van Ness Townhouses v. Mar Industries Corp.,* 862 F.2d at 756. (citing *Leicht v. Bateman Eichler, Hill Richards, Inc.,* 848

F.2d 130, 132 (9th Cir.1988)). See *Mitsubishi*, 473 U.S., at 626, 105 S.Ct. 3346.

The Federal Arbitration Act also provides that "(w)hen there is ... an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). See also *AT & T Technologies Inc. v. Communications Workers et al.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[T]he question of arbitrability ... is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

Here, the making of the arbitration agreement is at issue. Plaintiffs contend that they never assented to the arbitration agreement which KSA now seeks to have enforced. Plaintiffs aver that "Atlas never intended to be bound by an arbitration clause, and there is nothing in the circumstances which should lead Hitachi or KSA to believe that Atlas agreed to arbitration ... Moreover, it cannot be said that the Bothells knew or 'could not have been unaware of' Hitachi's purported intent to arbitrate disputes, where such intent was never communicated to Atlas in any meaningful way." [Pl. Opp'n Mot. Compel Arbitration at 10.]

Accordingly, the Court must evaluate the disputed making of the alleged arbitration agreement.

## III. Making of Arbitration Agreement

There is "a strong presumption in favor of enforcement of *freely negotiated* contractual choice-of-forum provisions ... that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi*, 473 U.S. 614, at 631, 105 S.Ct. 3346. (emphasis added).

Thus, the Supreme Court found that the federal policy favoring arbitration applies to "freely negotiated" arbitration agreements. Here, however, Atlas asserts a complete lack of negotiation or agreement to Hitachi's arbitration clause.

## Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention)

"An arbitration provision in an international commercial agreement ... is governed by Chapter Two of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208, which implemented the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), ratified by the United States, September 30, 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997 (reprinted following 9 U.S.C. § 201). A court in the United States faced with a request to refer a dispute governed by Chapter Two to arbitration performs a 'very limited inquiry' into whether an arbitration agreement exists and falls within the Convention's coverage."

*DiMercurio v. Sphere Drake Ins., Inc.*, 202 F.3d 71, 74 (1st Cir.2000) (citations and footnotes omitted).

Thus, the statutory framework of the Convention will guide the Court's analysis and determine if an arbitration agreement exists between the parties.

## Article II(2)—"Agreement in Writing"

Pursuant to Article II(2) of the Convention, "(t)he term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." 9 U.S.C. § 201, Art. II, § 2. "The modifying phrase 'signed by the parties or contained in a series of letters or telegrams' applies to both 'an arbitral clause in a contract' and 'an arbitration agreement.'" *Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd.*, 186 F.3d 210, 217 (2d Cir.1999). Thus, pursuant to the Convention, both an arbitration clause in a contract or an arbitration agreement must

be (a) signed by the parties or alternatively, (b) contained in a series of letters or documents to be enforceable. *Id.* at 217–18.

Here, there are no documents signed by both Atlas and the Defendants that contain either the Hitachi arbitration clause or a reference to the Hitachi arbitration clause. Defendant KSA asserts that "there is no requirement that an arbitration clause be part of a single paper signed by all parties. A series of documents incorporating an agreement to arbitrate is sufficient, exactly as the controlling statute 9 U.S.C. § 201, provides." [KSA Reply Mem.Supp.Mot. Compel at 4.] Thus, KSA tacitly concedes that the Hitachi arbitration clause is not contained within any document signed by both Atlas and Defendants. Instead KSA asserts that the Hitachi arbitration clause was incorporated by reference in "a series of documents." I disagree.

*Incorporation of Arbitration Clause by Reference*

Defendants contend that the Hitachi arbitration clause was incorporated in a "series of documents" thereby implicating Article 2 of the Convention which validates arbitration agreements "contained in an exchange of letters or telegrams" as enforceable. 9 U.S.C.A. § 201, Art. II, § 2.

Plaintiff Atlas avers, "(t)he arbitration clause which defendants have invoked to compel arbitration is found only in one place: Hitachi documents entitled 'General Terms and Conditions for Purchasing'. These 'Terms and Conditions' were never discussed by the parties, were not included with the purchase order and indeed, were never disclosed to Atlas until Mr. Shimotsuma filed his declaration in connection with KSA's Motion to Stay." [Pl. Br. Opp'n Mot. Stay and Compel at 4.]

In said declaration, Mr. Kiyoshi Shimotsuma, Chief Executive Officer of KSA avers, "I am sure that I included copies of Hitachi Zosen's 'General Terms and Conditions For Purchasing' in the contract materials I forwarded to Atlas for the KEK/B—Factory Project and the Photon Factory Project, and I believe I sent the same ... to Atlas in connection with the Transition Cap Project." [Shimotsuma Suppl.Decl.Supp.Mot. Stay and Compel at 3.]

Plaintiff Atlas responds, "... in the case of Mr. Shimotsuma's second declaration ... there is no foundation for the stated belief the documents were sent or that the witness actually mailed anything." [Pl. Reply Mem.Supp.Mot. Remand at 4–5.]

Furthermore, Atlas states, "Mr. Shimotsuma's declaration is carefully crafted to imply, but did not say, that Atlas received the General Terms ... He did not say the Terms and Conditions were sent to Atlas; he simply concluded that the secret Terms and Conditions became part of the agreement of the parties, without negotiation and without notice." [Pl.Br.Supp. Remand at 5.]

Toshihide Takama, an employee of defendant Hitachi Zosen avers that he sent two requests for proposal to Atlas in May and October 1995, both of which list Hitachi Zosen's "General Terms and Conditions for Purchasing" as attachments. Mr. Takama asserts that "it was Hitachi Zosen's standard business practice to include a copy of the 'General Terms and Conditions for Purchasing'," containing the disputed arbitration clause, along with such requests for proposal, and that he believes he followed that standard practice when he sent these requests for proposal to plaintiff Atlas. [Takama Decl. at 2.]

Atlas responds, "(t)here is no indication that Mr. Takama, chief engineer of the Advanced Vacuum Technology Department for Hitachi Zosen, actually does the mailing. Given the size of Hitachi it seems unlikely that Mr. Takama served as his own mail clerk." [Pl. Reply Mem.Supp. Mot. Remand at 5.]

Here, upon review of two purported requests for proposal, dated May 16 (KEK/B–Factory Project, purchase order# K828012) and October 17, 1995 (pur-

chase order# K828101), respectively, each list Hitachi's "General Terms and Conditions for Purchasing" under heading 5. Special Attachments (1). Under heading 6. Guarantee, the purported requests for proposal read:

> Unless otherwise specified herein, guarantee shall be in accordance with "GENERAL TERMS AND CONDITIONS FOR PURCHASING".

[Suppl. Shimotsuma Decl., Ex. H; Ex. I] However, the Court notes that there is no reference, explicit or implied, to arbitration or dispute resolution on the face of these documents. Certainly there is no indication that Hitachi's "General Terms and Conditions for Purchasing" contains an arbitration clause.

Upon review of the documents submitted by the parties, I find the Hitachi arbitration clause was not unequivocally incorporated in any of "the series of documents" exchanged between Atlas and Defendants. Rather the "series of documents" merely contained a vague reference, i.e., "General Terms and Conditions for Purchasing", which facially does not in any way implicate arbitration. Significantly, there is no proof to support Defendants' contention that the document "General Terms and Conditions for Purchasing" was actually attached.

Mr. Shimotsuma states, "I am informed that the Bothells state in their declarations that they believed that the references to 'General Terms and Conditions For Purchase' in the purchase orders they acknowledge having received from KSA were to a paragraph headed 'Further Terms & Conditions' in their letter to KSA and Hitachi Zosen Corporation dated December 15, 1995 ... For a variety of reasons in addition to the fact that the language ... obviously is different ..., the confusion claimed makes no sense at all." [Shimotsuma Suppl.Decl. at 2]

I find it telling that although Defendants assert the unreasonableness of Atlas' mis-understanding, nowhere do Defendants contend that the arbitral implications of the phrase "General Terms and Conditions For Purchasing" was facially explicit in any of the "series of documents" exchanged. In effect, Defendants blame Atlas for the lack of clarity in Defendant's choice of terminology used in their own documents. Significantly, Defendants do not contend that discussions ever took place between the parties about either arbitration in general, or the arbitral meaning of the phrase "General Terms and Conditions."

It is possible that confusion, inexperience or even incompetence may have been a factor in the failure of Atlas to glean that Defendants' use of the phrase "General Terms and Conditions" did not refer to the "Further Terms & Conditions" phrase which Atlas used in its December 15 letter. Whatever the reason for the misinterpretation, it is apparent that the arbitral meaning of the phrase "General Terms and Conditions" is by no means clear on its face, particularly in the manner in which it was employed by Defendants. Therefore, I find that in a series of documents, where the words used to refer to a proposed arbitration agreement are so vague as to be meaningless and no further explanation is provided, either by attachment, discussion or otherwise, the totality of the documents exchanged between the parties does not constitute a valid "arbitration agreement" under the Convention.

## IV. Improper Removal Pursuant to Convention

Defendants' removal of the instant case from state court pursuant to § 205 of the Convention was improper. Section 205 allows for removal "(w)here the subject matter of an action or proceeding pending in a state court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. Since there is no arbitration agreement under the terms of the Convention, the dispute in question does not fall within the Convention, thus

subject matter jurisdiction cannot properly be premised on the Convention. See, e.g., *Kahn Lucas,* 186 F.3d at 218. Since in removing the instant case Defendants incorrectly asserted the applicability of the Convention, a remand of the complaint to state court is appropriate.

## V. Lack of FAA Jurisdiction

The Defendants' motion to compel arbitration is pursuant to Section 4 of the FAA. Since I have determined that there was no "agreement in writing", i.e., no making of an arbitration agreement between Atlas and Defendants, there results an inapplicability of the FAA to compel arbitration in the instant suit.

"We recognize that *the FAA is not a jurisdictional statute:*

'[The FAA] is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet *it does not create any independent federal question jurisdiction* under [§ 1331] or otherwise. Section 4 provides for an order *compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute;* hence, there must be diversity of citizenship or some other basis for federal jurisdiction.'"

*Circuit City Stores, Inc. v. Adams,* 194 F.3d 1070, 1071 (9th Cir.1999) (quoting *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added)).

The *Circuit City* court further stated, "we need not consider whether the district court had underlying federal question jurisdiction because the FAA is inapplicable. As a threshold matter, therefore, the district court lacked the authority under Section 4 of the FAA to compel arbitration." *Id.,* at 1071.

Here, I see no underlying basis for federal jurisdiction. Defendants have assert-

ed no jurisdictional basis other than the FAA and the Convention, absent the applicability of either all that remains is a state contract law dispute better left to a state court. "The Supreme Court has directed that we 'apply ordinary state law principles that govern the formation of contracts,' and the 'federal substantive law of arbitrability.' Thus state law determines questions 'concerning the validity, revocability, or enforceability of contracts generally,'" *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 417 n. 4 (4th Cir.2000) (citations and footnotes omitted).

For this reason, I will not address the validity of the contract between Atlas and Defendants nor the validity of any alleged subsequent modifications. Accordingly, I find it in the interests of the principles of comity that I do not resolve what is a dispute steeped in state law and remand the instant suit, in its entirety, to state court. See generally *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

## Conclusion

I find that pursuant to the Convention there is no evidence of a valid agreement to arbitrate between plaintiff Atlas and Defendants. Defendants offer only bald assertions that Hitachi's "General Terms and Conditions for Purchasing," purportedly containing an arbitration clause, was an attachment to purchase orders sent to and received by Atlas. But if, as Atlas asserts, the "General Terms and Conditions" were not attached to the purchase orders, Atlas could neither agree nor acquiesce to the Defendant's arbitration clause. There is no indication on the face of the purchase orders or any other document exchanged by the parties, neither is there any claim of discussion or negotiation between the parties regarding Defendants' intent to arbitrate.

Due to the lack of a valid arbitration agreement under the Convention, Defendants' reliance upon § 205 of the Convention in removing the instant case from

state court to federal district court is improper. Thus, an immediate remand of the instant case to state court is appropriate.

In addition, the Court's finding that no valid arbitration agreement exists between the parties makes the Federal Arbitration Act inapplicable to the instant suit. Thus, I must deny Defendants' motions to stay the instant proceedings and to compel arbitration.

In consideration of the foregoing, Defendants' motion to stay the instant action and compel arbitration and plaintiff Atlas' motion to remand the instant complaint to state court, I hereby ORDER:

    A.  That Defendant KSA's Motion to Compel Arbitration is DENIED.

    B.  That Defendant KSA's Motion to Stay Action Pending Arbitration is DENIED.

    C.  That Plaintiff Atlas' Motion for Remand of the instant case to state court is GRANTED. Plaintiff's complaint is REMANDED to the Superior Court of the State of Washington for Jefferson County forthwith.

The Court shall rule on Plaintiff's motion for attorney fees in association with the instant motion to remand separately.

It is so ordered.