In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-3862

ERNST & YOUNG LLP and CHARLES J. ROACH,

*Defendants-Appellants*,

*v.*

BAKER O'NEAL HOLDINGS, INC., and AMERICAN
PUBLIC AUTOMOTIVE GROUP, INC.,

*Plaintiffs-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 1538—**David F. Hamilton,** *Judge.*

ARGUED FEBRUARY 26, 2002—DECIDED SEPTEMBER 23, 2002

Before FAIRCHILD, COFFEY, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Plaintiffs Baker O'Neal Holdings,
Inc. and American Public Automotive Group, Inc. filed for
relief under Chapter 11 of the Bankruptcy Code. Shortly
thereafter, the plaintiffs initiated an adversary proceed-
ing against Ernst & Young LLP and Charles J. Roach
("Ernst & Young"), asserting various claims. Ernst & Young
then objected to provisions of the plaintiffs' Chapter 11 plan
of reorganization, arguing that provisions within the pro-
posed plan would infringe upon Ernst & Young's ability
to bring an action or assert a defense against third par-
ties in the adversary proceeding. The plaintiffs then mod-

ified their proposed plan to Ernst & Young's apparent satisfaction, and the bankruptcy court confirmed the plan as modified. As described in both the plan and the plan's confirmation order, the bankruptcy court expressly retained jurisdiction for the purpose of "[a]djudication of any pending adversary proceeding, or other controversy or dispute." After the plan's confirmation, Ernst & Young filed a motion to dismiss the adversary proceeding or to stay the proceeding pending arbitration based on prior contractual language between the parties. The plaintiffs objected, asserting that in light of their confirmed plan, the bankruptcy court retained jurisdiction to adjudicate the merits of the adversary proceeding. The bankruptcy court agreed, denying Ernst & Young's motion, and the district court affirmed. For the reasons stated herein, we affirm.

## I. History

American Public Automotive Group is a wholly owned subsidiary of Baker O'Neal Holdings. Together, they employed the services of Ernst & Young from 1994 to 1998, working closely with Charles J. Roach, a partner at Ernst & Young. In October 1996 and again in August 1997, Ernst & Young entered into "Engagement Letters" with the plaintiffs. The terms of the Engagement Letters included a provision that required the parties to resolve any "controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by [Ernst & Young]" through arbitration.

The plaintiffs filed for civil bankruptcy relief on October 30, 1998. On December 7, 1999, they initiated adversary proceedings against Ernst & Young and Charles J. Roach, seeking to avoid and recover fraudulent transfers of property, and to recover damages. In addition to professional misconduct, the plaintiffs alleged that Charles J. Roach

assisted James O'Neal, Baker O'Neal Holdings's former president and chief executive officer, in obtaining a $3.7 million loan from Baker O'Neal Holdings.

On December 13, 1999, the plaintiffs filed a proposed plan of reorganization and Ernst & Young filed an objection to that plan on January 19, 2000. The objection stated that a settlement agreement and release in the plan would limit Ernst & Young's ability to bring an action or assert a defense against Patrick J. Baker, the sole shareholder of Baker O'Neal Holdings and the Chairman of the Board of Directors, or his wife Penny. On February 11, 2000, the plaintiffs modified the settlement agreement and release in the plan, excluding Ernst & Young from any limitation in pursuing an action or asserting a defense against the Bakers. The modification apparently satisfied Ernst & Young, as they withdrew their objection to the plan. The plan was then confirmed on February 23, 2000 by the bankruptcy court.

Under the terms of both the plan and the confirmation order, the bankruptcy court retained jurisdiction for the purpose of "[a]djudication of any pending adversary proceeding, or other controversy or dispute." On March 10, 2000, Ernst & Young filed a motion to dismiss or stay the adversary proceeding pending arbitration, citing the terms of the Engagement Letters. The plaintiffs objected. The bankruptcy court denied Ernst & Young's motion, and the district court affirmed, finding that arbitration was precluded by the terms of the confirmed plan and that Ernst & Young, in any event, had waived its right to arbitrate.

On appeal, Ernst & Young argues, *inter alia*, that the district court erred in ruling that confirmation of the plan altered the parties' prior arbitration agreement. Citing language in the plan and the confirmation order, Ernst & Young claims that the documents merely con-

firm the bankruptcy court's ability to "retain control over the case" and do not supersede the arbitration provisions of the Engagement Letters. Ernst & Young also disputes the lower court's conclusion that its actions in the bankruptcy proceeding were sufficient to waive its right to arbitrate. Ernst & Young contends that its actions were "defensive" in nature and therefore should not constitute waiver of the right to proceed in another forum.

## II.  Analysis

### A.  Terms of the Plan

Denial of a motion to stay proceedings pending arbitration is reviewed *de novo*, *see Adamovic v. METME Corp.*, 961 F.2d 652, 653 (7th Cir. 1992). In their Engagement Letters, the parties provided for "arbitration of any 'controversy or claim arising out of or relating to the services covered by this letter or hereafter provided by [Ernst & Young].'" However, the plaintiffs' subsequent confirmed plan of reorganization provides that the bankruptcy court retains jurisdiction "to adjudicate" any "pending adversary proceeding, other controversy or dispute."

A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations. *See In re Chicago, Milwaukee, St. Paul and Pacific R.R., Co.*, 891 F.2d 159, 161 (7th Cir. 1989). Ernst & Young argues that the focus of our analysis should be on the words "retains jurisdiction" and that the bankruptcy court can satisfy its obligation to retain jurisdiction over the pending adversary proceeding by simply hearing arguments on the motion to compel arbitration or to stay the proceedings. We disagree. The plaintiffs' plan expressly provides for the bankruptcy court to retain jurisdiction *to adjudicate* pending adversary proceedings, controversies, and disputes. While, as the district court explained, the terms of the

plan could have called for the bankruptcy court to retain jurisdiction over a dispute while its merits are arbitrated, the terms of this plan specifically called for the bankruptcy court to retain jurisdiction *to adjudicate* such disputes. *See* BARRON'S LAW DICTIONARY 11 (Ed. 1996) (defining "adjudication" as "the determination of a controversy and a pronouncement of a judgment based on evidence presented, implies a final judgment . . . as opposed to a proceeding in which the merits of the cause of action were not reached"). Consequently, we believe that the bankruptcy court's retention of jurisdiction to adjudicate pending adversary proceedings, controversies and disputes should not be read to limit the bankruptcy court's jurisdiction to a ruling on Ernst & Young's motion to compel arbitration. *See Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 143 (7th Cir. 1978) ("A motion to stay proceedings and to compel arbitration focuses judicial scrutiny upon the arbitrability of the controversy, not upon the controversy itself. . . . It has no effect on the merits themselves.").

Had Ernst & Young wished to protect its right to arbitrate, it certainly could have done so in the same manner in which it sought to protect its rights against the Bakers. *See*, *e.g.*, *In re GWI, Inc.*, 269 B.R. 114, 118 (Bankr. D. Del. 2001) (finding that because the parties expressly adopted arbitration provisions of pre-petition agreements into a plan of reorganization, the prior arbitration provisions were enforceable and not superceded by generalized language in the confirmed plan conferring jurisdiction on the bankruptcy court). We believe that in this instance, Ernst & Young's right to arbitrate is superseded by the terms of the confirmed plan.

## B. *Waiver of Rights of Arbitration*

Regardless of how we interpret the term "adjudication" in the plan, Ernst & Young waived any right to arbitrate. The

factual determinations that a district court predicates a finding of waiver upon are reviewed for clear error, while the legal question of whether the conduct amounts to waiver is reviewed *de novo. See Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999 ). Reviewing for "clear error" means that the Court of Appeals will reverse only if it reaches a firm and definite conviction that the district court made a mistake. *See St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589 (7th Cir. 1992).

A contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate. *See Cabinetree, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Courts must examine the totality of the circumstances and "determine whether based on all the circumstances, the [party against whom the waiver is to be enforced] has acted inconsistently with the right to arbitrate." *Grumhaus v. Comerica Securities, Inc.*, 223 F.3d 648, 650-51 (7th Cir. 2000) (quotation omitted); *see also Iowa Grain Co.*, 171 F.3d at 510. Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision—"*did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?*" *Cabinetree*, 50 F.3d at 391 (emphasis added).

In *Cabinetree*, the plaintiffs filed a breach of contract suit, which was removed to federal court by the defendant due to diversity of citizenship. *See id.* at 389. Six months later, the defendant moved to stay the action pending arbitration. *See id.* On appeal, we noted that the defendant had participated in pretrial activities without challenging the forum or moving for arbitration. *See id.* at 390-91. Under these circumstances, we held that the defendant's

actions were sufficient to demonstrate the party's selection of a forum and established a presumption of waiver of the right to arbitrate. *See id.*

Similarly, the plaintiffs filed a complaint against Ernst & Young on December 7, 1999. In the months following, Ernst & Young's actions indicated an intention to proceed with the adversary proceeding in litigation, not in arbitration. As the district court highlighted below, Ernst & Young did not pursue arbitration until after its objection to the plaintiffs' plan was resolved. At this point, the bankruptcy court had already evaluated all claims with respect to the confirmation of the reorganization plan. Further, Ernst & Young's objection to the plaintiffs' plan emphasized its concern about its rights as against the Bakers in the adversary proceeding. Because the Bakers were not bound by the arbitration provisions in the Engagement Letters, Ernst & Young's concern with respect to the Bakers implied that Ernst & Young was intending to proceed judicially. Moreover, as we have already discussed, the plan included terms that called for the bankruptcy court "to adjudicate" any pending adversary proceedings, and Ernst & Young did not raise any concerns about either the adjudication provision in the plan or the plan's effect, if any, on their right to arbitrate.

Ernst & Young argues that we should follow the Delaware Bankruptcy Court in *In re Charter Behavioral Health Sys., LLC*, 277 B.R. 54 (Bankr. D. Del. 2002). In this case, the debtor filed for Chapter 11 relief in February 2000 and commenced an adversary proceeding against a creditor in June 2001. *See id.* at 56. The creditor-defendant filed its Answer in August but did not mention its contractual right to compel arbitration. *See id.* The creditor-defendant then participated in limited scheduling and discovery actions until December 2001, when it filed its motion to dismiss the adversary proceeding in favor of arbitration. *See id.* The bankruptcy court dismissed the

adversary proceeding in favor of arbitration, finding that the creditor-defendant's actions were not sufficient to waive its right to arbitrate. *See id.* at 58-59.

We find the case at bar to be distinguishable from *Charter*. Specifically, in *Charter* the creditor-defendant seeking to proceed in arbitration did not actively participate in the process of confirming the debtor's plan of reorganization. In contrast to the passive creditor-defendant in *Charter*, Ernst & Young had actively participated in the plan confirmation process prior to seeking arbitration. We believe that Ernst & Young's particular acts of participation were sufficient to waive its right to arbitrate.

Neither the bankruptcy court nor the district court found any reason why Ernst & Young might not have asserted its desire to arbitrate at an earlier date. We agree, and because we find no error in the lower court's assessment of the situation, we are similarly unable to excuse Ernst & Young's delay. Ernst & Young's failure to assert its desire to preserve its rights to arbitrate claims—while having already filed an objection, which revealed an intent to pursue litigation—cannot amount to "all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." *Cabinetree*, 50 F.3d at 391. Because Ernst & Young's actions were inconsistent with its claimed right to arbitrate and because Ernst & Young's actions were not exercised in a diligent manner, we find any right to compel such a proceeding waived.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Ernst & Young's motion to compel arbitration.

FAIRCHILD, *Circuit Judge*, dissenting. My colleagues interpret the Plan so that it "superceded" Ernst & Young's right to arbitrate. In substance, they hold that Article 8.1 of the Plan limits the jurisdiction of the bankruptcy court so as to exclude its otherwise unquestioned jurisdiction to recognize and implement the parties' promise to arbitrate. Article 8.1 begins, "Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for the following purposes: . . . ." There follows a list of seventeen types of actions that the bankruptcy court might be expected to perform. This long and comprehensive list suggests that an inclusive rather than an exclusive description of retained jurisdiction was intended.

Paragraph (o), one of the seventeen, lists "[a]djudication of any pending adversary proceeding, or other controversy or dispute, in the Debtors' Chapter 11 Cases, which arose pre-confirmation and over which the Bankruptcy Court had jurisdiction prior to confirmation of the Plan." My colleagues limit the meaning of "adjudication" to a process of final determination of the adversary proceeding on its merits, and exclude a determination of a motion to dismiss or stay the adversary proceeding so as to enforce the promise to arbitrate.

In this context, this reading of adjudication seems too narrow. Again, the language of (o) seems inclusive ("adversary proceeding, or other controversy or dispute"), and the grant of a motion to compel arbitration would be a decision on the merits of the controversy raised by that motion.

Indeed, courts have often referred to the determination of the right to arbitrate as an "adjudication." The Supreme Court has recognized that, when presented with a motion under § 3 of the Federal Arbitration Act (to stay the underlying district court proceedings while the par-

ties arbitrate), a court may "adjudicate" the issue whether the parties executed an enforceable arbitration agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Other federal courts have reiterated that resolution of motions brought under §§ 3 and 4 of the FAA is "adjudication." *See, e.g.*, *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 473 (5th Cir. 2002) (elaborating how a two-step inquiry governs the "adjudication of motions to compel arbitration under the FAA"); *National Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 491 (3d Cir. 1992) ("The Arbitration Act authorizes a district court to adjudicate the substantive issues of the making and performance of an arbitration agreement."); *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, 439 F.2d 1268, 1276 (2d Cir. 1971) (the right to arbitrate is an issue "to be adjudicated by the federal courts whenever such courts have subject matter jurisdiction") (internal quotation marks and citation omitted); *Bothell v. Hitachi Zosen Corp.*, 97 F. Supp. 2d 1048, 1050-51 (W.D. Wash. 2000) (court had "jurisdiction to adjudicate" dispute over existence of valid arbitration agreement).

My colleagues support their narrow interpretation of "adjudication" with a dictionary definition. They offer BARRON'S LAW DICTIONARY, which defines "adjudication" as "impl[ying] a final judgment . . . as opposed to a proceeding in which the merits of the cause of action were not reached." But though a dictionary collects common usages, it hardly exhausts the "full range of nuances that context lends to meaning." *Unelko Corp. v. Prestone Prods. Corp.*, 116 F.3d 237, 241 (7th Cir. 1997); *see also TE-TA-MA Truth Foundation–Family of URI, Inc. v. World Church of the Creator*, 297 F.3d 662, 666 (7th Cir. 2002) ("[D]ictionaries reveal a range of historical meanings rather than how people use a particular phrase in contemporary culture."). A single word can take multiple meanings. *Calderon v. Witvoet*, 999 F.2d 1101, 1104 (7th Cir. 1993). In BLACK'S

LAW DICTIONARY (7th ed. 1999), for instance, "adjudication" has three definitions, the first of which emphasizes process: "[t]he legal process of resolving a dispute; the process of judicially deciding a case." A DICTIONARY OF MODERN LEGAL USAGE (2d ed. 1995) introduces three more definitions, beginning with "the process of judging."

In my view Article 8.1(o) effected no change in the bankruptcy court's pre-confirmation authority to enforce the parties' arbitration agreements. "Confirmation does not alter the basic jurisdictional analysis applicable to bankruptcy courts." 8 COLLIER ON BANKRUPTCY ¶ 1142.04[1] (15th ed. rev. 2002). This interpretation also conforms to the strong federal policy favoring arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

My colleagues go on to conclude that, regardless of how the term "adjudication" in the Plan is interpreted, Ernst & Young waived any right to arbitrate. In support, they state that Ernst & Young's actions indicated an intention to proceed with the adversary proceeding in litigation rather than arbitration; that Ernst & Young's active participation in the confirmation process was sufficient to waive its right to arbitrate; and that Ernst & Young did not seek arbitration in a diligent manner. With all respect, I conclude that the record does not support any of these propositions and therefore does not support a conclusion of waiver.

The question of Ernst & Young's diligence requires a chronology of the adversary proceeding. The complaint was filed on December 7, 1999. Summons was issued on December 19, requiring an answer to be filed by January 19, 2000. Ernst & Young received consecutive extensions to respond, first by February 18 and then by March 10, 2000. On March 10—only 16 days after confirmation of the Plan—Ernst & Young filed in the district court its motion

for arbitration (the appellees, furthermore, do not dispute Ernst & Young's representation on appeal that it had raised its right to arbitrate informally with the plaintiffs "[w]ell before filing its Arbitration Motion"). Also on March 10, Ernst & Young filed in the bankruptcy court a motion to dismiss, or in the alternative, a motion to stay proceedings pending arbitration. That very same day, Ernst & Young sought (and later received) a third extension to answer the complaint pending the court's ruling on its motion to dismiss or alternatively its motion to stay.

The majority believes that this case is controlled by *Cabinetree, Inc. v. Kraftmaid Cabinetry of Wisconsin, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995), in which we explained that "diligence or lack thereof" should, among other factors, "weigh heavily in the decision whether to send the case to arbitration." In that case, we found waiver because the party seeking an eleventh-hour arbitration already had removed the case to federal court, actively engaged in discovery, and compelled the opponent to produce almost 2,000 documents. *See also St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 591 (7th Cir. 1992) (party waived right to arbitrate by spending ten months filing discovery requests and participating in depositions); *Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001) (party did not waive right to arbitrate by moving to dismiss complaint and engaging in limited discovery because it did not "substantially invoke[ ]" the "litigation machinery") (internal quotation marks and citation omitted). No such substantial resort to litigation occurred here. In any event, Ernst & Young did not delay: it asserted its right to arbitrate as soon as it was legally required to do so; beyond that, it owed no explanation for the timing of its request.

The majority also believes that this case falls within *Cabinetree*'s holding that an election to proceed before

a nonarbitral forum to resolve a dispute presumptively waives the right to arbitrate, even if the opposing party would not be prejudiced by an order compelling arbitration. 50 F.3d at 390. According to my colleagues, Ernst & Young manifested an intent to proceed in a judicial forum when it actively participated in the Plan confirmation process before seeking arbitration. As they explain, because Ernst & Young did not assert its desire to arbitrate "at an earlier date," it acted "inconsistent[ly]" with—and therefore waived—its claimed right to arbitrate.

In *Cabinetree*, we held that a presumptive waiver may arise from recourse to the judicial process, but we also recognized that this is just a presumption and not an invariable rule. We noted that there may be situations in which such recourse "does not signify an intention to proceed in a court to the exclusion of arbitration." *Cabinetree*, 50 F.3d at 390. For instance, the "shape of the case might so alter as a result of unexpected developments during discovery or otherwise that it might become obvious that the party should be relieved from its waiver and arbitration allowed to proceed." *Id.* at 391. More recently we interpreted *Cabinetree* as establishing the proposition that a party waives its right to arbitrate only when it "elect[s] a judicial forum rather than the arbitral tribunal." *Iowa Grain Co. v. Brown*, 171 F.3d 504, 509 (7th Cir. 1999).

Ernst & Young never elected a judicial forum over an arbitral forum. Its only substantive act in the bankruptcy proceeding was to file an objection (on January 19, 2000) to the Plan. Article IX of the Plan incorporated a Baker Settlement Agreement releasing Patrick J. Baker (sole shareholder of debtor Baker O'Neal) and his wife from all claims that any creditor of the debtors may have against them. Ernst & Young, a creditor, objected to the "nonconsensual release of claims of all creditors" against the Bakers. The objection stated that the release would

"disadvantage creditors such as Ernst & Young in the adversary proceeding and any other litigation." It noted Ernst & Young's right to initiate a third-party complaint against the Bakers in the adversary proceeding, which right would be nullified by the release, as well as other claims and non-party defenses "whether in the adversary proceeding or outside of it." The most that can be said concerning this language is that Ernst & Young had not yet decided to participate in merit litigation of the adversary proceeding. The obvious purpose of the objection was to protect Ernst & Young from release of its claims against the Bakers. The Bakers were not parties to the arbitration agreement, and the language of the objection showed that Ernst & Young was still considering the adversary proceeding as one forum in which to pursue those claims, although the objection made clear that there were other fora. The language cannot be read as a statement that Ernst & Young intended to participate in the adversary proceeding rather than to exercise its right to arbitrate. *See Iowa Grain Co.*, 171 F.3d at 510 (filing a class action lawsuit rather than an arbitration claim was insufficient to waive right to arbitrate individual claims).

I respectfully dissent.

A true Copy:

      Teste:

                                _____
                                *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*