In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4177

Elio Del Vecchio,

Plaintiff-Appellant,

v.

Conseco, Inc., Bankers National Life
Insurance Company, and Great American
Reserve Insurance Company,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 98-0091-C H/G--David F. Hamilton, Judge.

Argued May 8, 2000--Decided October 23, 2000

Before Bauer, Posner, and Diane P. Wood, Circuit Judges.

Diane P. Wood, Circuit Judge. At one time, Elio Del Vecchio held a $5,000 whole life insurance policy issued by Bankers National Life Insurance Company (Bankers Life). Many years later, he turned it in and replaced it with a $10,000 universal life policy. He thought, in essence, that he could transform the $5,000 policy into the $10,000 policy for free. When that turned out not to be true, he sued Conseco, Bankers Life, and Great American Reserve Insurance Company for defrauding him by inducing him to make the trade. Del Vecchio's suit was brought on behalf of himself and other purchasers of the defendants' life insurance products who had been similarly defrauded. Because we find that the federal courts do not have jurisdiction over this case, it must be dismissed on that basis.

I

In 1947, Del Vecchio purchased his $5,000 whole life insurance policy from Bankers Life. For the next 20 years, he paid premiums, and in 1967 Bankers Life informed him that he was "paid up" and that his policy would remain in effect without any further premium payments.

In 1982, a Bankers Life agent, Joseph Gennaco, contacted Del Vecchio and tried to convince him to turn in his $5,000 whole life policy and replace it with a $10,000 universal life policy. Gennaco told him that after his initial premium payment (equal to the value of his surrendered policy, which was $3,137.27), he would not have to make any further premium payments on the new policy. As Del Vecchio understood it, Gennaco in effect told him that he could double the size of his policy without having to pay any additional money.

After mulling over Gennaco's proposal for a full two years, Del Vecchio purchased the new policy in 1984. The policy included a "Table of Premiums and Values," and it explained the table as follows:

TABLE OF VALUES--Minimum Cash Values are shown in the table on Page 4 ["Table of Premiums and Values"] on the assumption that the Scheduled Premiums are paid as shown. These values are based on the Guaranteed Interest Rate and the Maximum Annual Risk Charges shown in the table on Page 9, and on the assumption that no loans, partial withdrawals nor additional premium payments are made.

In 1985, Del Vecchio received his first policy statement. The statement included the following language:

With no loans, partial withdrawals, or future increases made after this report date, based upon current assumptions, your policy will remain in force until maturity with no future premiums.

And, based upon guaranteed assumptions, your policy will remain in force until 5/20/1997 with no future premiums.

For the next nine years, Del Vecchio continued to receive annual statements from Bankers Life. In 1994, however, he was distressed to observe that for the first time, the actual cash value of his policy was less than the cash value "guaranteed" by the policy, by $366. The actual cash value was $3,810 (the amount he would receive if he were to surrender his policy), while the "cash surrender loan value" listed for year 11 of the policy in the "Table of Premiums and Values" was $4,176. The shortfall increased every year thereafter. Del Vecchio never paid any premium payments beyond his initial payment on the new $10,000 policy.

Believing that he had been duped by the company's representations at the time he made the switch in policies, Del Vecchio filed a class-

action lawsuit in federal court in 1998. His complaint included six counts, all based on state law, including, among others, breach of contract, fraudulent misrepresentation, and breach of fiduciary duty. The district court granted the defendants' motion for summary judgment on the basis that the statutes of limitations for Del Vecchio's various claims had run. Del Vecchio appeals.

II

In his complaint, Del Vecchio asserted that federal jurisdiction was proper under 28 U.S.C. sec.sec. 1332 and 1367. But in order to support jurisdiction under sec. 1332, two requirements must be satisfied: complete diversity of citizenship between the plaintiffs and the defendants, and the proper amount in controversy (now and when Del Vecchio sued, more than $75,000). Del Vecchio's problem is not the citizenship requirement, as the parties are clearly diverse: Del Vecchio's domicile is in Massachusetts, while each of the three corporate defendants is incorporated in either Indiana or Texas, and all have their principal place of business in Indiana. Rather, Del Vecchio's difficulty lies in meeting the amount in controversy requirement.

Snyder v. Harris, 394 U.S. 332 (1969), held that Fed. R. Civ. P. 23 does not alter the general rule that multiple persons' claims cannot be combined to reach the minimum amount in controversy. A few years later, the Court extended Snyder's rule to the situation in which the named plaintiff's claim met the statutory amount in controversy, but unnamed class members had claims that did not. See Zahn v. International Paper Co., 414 U.S. 291 (1973). Since the passage of the supplemental jurisdiction statute, 28 U.S.C. sec. 1367, there has been a conflict in the circuits on the question whether Zahn's holding survives the enactment of sec. 1367. This court concluded that it did not, in Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928, 930-33 (7th Cir. 1996). Although it had appeared that the Supreme Court would resolve the issue, it did not in the end, instead affirming by an equally divided court the Fifth Circuit's decision (which had taken the same position as Stromberg Metal Works) in In re Abbott Laboratories, 51 F.3d 524, 528-29 (5th Cir. 1995), aff'd as Free v. Abbott Laboratories, Inc., 120 S.Ct. 1578 (2000). In any event, the issue has been settled for this circuit's purposes for some time. See also In re Brand Name Prescription Drugs, 123 F.3d 599, 609 (7th Cir. 1997). Ultimately, though, the continuing vitality of Zahn is irrelevant here,

because unless we were to accept some of Del Vecchio's more creative arguments (which we discuss below), this case fits into the Synder pattern rather than the Zahn one. And, as we now explain, Del Vecchio's suit cannot proceed under Snyder.

Del Vecchio's complaint included the following allegations about the amount in controversy:

The amount-in-controversy exceeds $75,000, exclusive of interests and costs. Specifically, Plaintiff has alleged unjust enrichment and seeks the imposition of a constructive trust. As a result, he has an undivided interest in the full recovery in this action, which will substantially exceed the necessary jurisdictional amount.

From the language of his pleading, it appears that Del Vecchio was trying to evade Snyder by framing the amount in controversy in terms of what the defendants would have at stake if the class action were certified: their total unjust enrichment over which Del Vecchio seeks the imposition of a constructive trust. (Presumably, he is proposing to act as the trustee for the other class members.) Del Vecchio's theory, however, amounts to a complete end-run around the principles enunciated in Snyder. See In re Brand Name Prescription Drugs, 123 F.3d at 610 (discussing this problem). While this court has adopted the "either viewpoint" approach (that is, the amount in controversy can be determined from either the plaintiff's or the defendant's viewpoint), see McCarty v. Amoco Pipeline Co., 595 F.2d 389, 395 (7th Cir. 1979), cited in In re Brand Name Prescription Drugs, 123 F.3d at 609, we have nonetheless maintained that "[w]hatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint." In re Brand Name Prescription Drugs, 123 F.3d at 610. That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.

Furthermore, this case does not fit into the narrow exceptions to the anti-aggregation rule recognized by the Snyder Court. It is not a case where there is one res at issue, such as an estate. In those cases, it is proper to consider the value of the entire res for purposes of determining jurisdiction, for even if several plaintiffs have a claim to it, the recovery is nonetheless a unitary whole that must then be divided. See, e.g., Shields v. Thomas, 58 U.S. (17 How.) 3, 4-5 (1854); Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1422-23 (2d Cir.

1997) (discussing Shields and the development of the "common fund exception" to the "non-aggregation rule"). This is not such a situation, as each of the insureds Del Vecchio wants to represent is entitled to his or her own separate recovery. Under Snyder, Del Vecchio simply cannot satisfy the amount in controversy requirement by framing it in terms of the aggregate amount by which Bankers Life and the other defendants have been unjustly enriched through their insurance contracts with the various unnamed class members.

Noting this problem with jurisdiction, and our duty to dismiss the case if jurisdiction is lacking, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 186-87 (1936), we asked the parties to submit supplemental briefing regarding the amount in controversy. Del Vecchio responded by claiming that not only he, but each and every class member, would be able to assert such high punitive damages in good faith that each class member individually would meet the amount required by sec. 1332, and that the total amount in controversy has ballooned to $1.5 billion. See Bell v. Preferred Life Assurance Society, 320 U.S. 238, 240 (1943) (where both actual and punitive damages are recoverable, each must be considered to determine jurisdictional amount). The defendant insurance companies also appear to rely on the availability of punitive damages, as we explain below, though they principally complain that everyone proceeded in good faith below and that they do not wish to lose their favorable judgment on the merits.

We have no quarrel in principle with the idea that punitive damages may sometimes be taken into account in deciding whether the proper amount is in controversy. As we have written before:

[w]here punitive damages are required to satisfy the jurisdictional amount in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear "beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount."

Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1211-12 (7th Cir. 1995), quoting Risse v. Woodard, 491 F.2d 1170, 1173 (7th Cir. 1974). Generally, we give plaintiffs the benefit of the doubt in these matters, but a complaint will be dismissed if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." See, e.g., Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955, 957 (7th Cir. 1998), quoting St. Paul Mercury

Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). And a claim for actual damages that vastly exceeds the apparent amount at stake ($600 or so) and asserts a right to punitive damages at the far upper end of the possible distribution of outcomes must be assessed critically; otherwise, the statutory limits on federal court jurisdiction could be undermined. Compare Gardynski-Leschuck v. Ford Motor Co., 142 F.3d 955 (7th Cir. 1998).

Indiana does allow the award of punitive damages for fraud and breach of fiduciary duty, and so the first of the two requirements mentioned above is met. See, e.g., Erie Ins. Co. v. Hickman by Smith, 622 N.E.2d 515, 519 (Ind. 1993) (breach of duty of good faith); Bud Wolf Chevrolet, Inc. v. Robertson, 519 N.E.2d 135, 136-37 (Ind. 1988) ("malice, fraud, gross negligence"). Whether we have jurisdiction, then, depends on whether, "to a legal certainty," we are convinced that Del Vecchio is not entitled to damages sufficient to meet the amount in controversy requirement. In cases where the defendants contest punitive damage allegations, we require the plaintiff to support its claim with "competent proof," lest fanciful claims for punitive damages end up defeating the statute's requirement of a particular amount in controversy. See Anthony v. Security Pacific Fin. Servs., Inc., 75 F.3d 311, 315 (7th Cir. 1996). Here, in the lower court the defendants were certainly challenging Del Vecchio's substantive claims to entitlement to punitive damages; their accommodating attitude did not arise until their supplemental briefs on appeal, at which point they found themselves in the slightly odd position of urging that Del Vecchio indeed had substantial claims for both actual and punitive damages. We think it appropriate to review the new punitive damage allegations with the same level of scrutiny that we would give such allegations had they been contested for jurisdictional purposes below.

The defendants now assert that Del Vecchio's compensatory damages could be as much as $15,000: $5,000 for the policy he traded in and $10,000 for the policy he bought. The defendants then reason that because Del Vecchio's complaint includes claims for which Indiana law provides punitive damages may be available, it is entirely possible that punitive damages exceeding $60,000 would be awarded. This, we assume, is not because they are conceding that their behavior might rationally be seen by anyone as sufficiently culpable to deserve such an award; it is only an observation that a 4 to 1 ratio of punitive to compensatory damages is not uncommon for these sorts of claims under Indiana law. See, e.g.,

Schimizzi v. Illinois Farmers Ins. Co., 928 F.
Supp. 760, 783-87 (N.D. Ind. 1996) (surveying
Indiana cases in which punitive damages were
awarded against an insurer).

This seems like sheer speculation to us,
however, and we do not find it a persuasive
reason to conclude that Del Vecchio individually
has alleged a claim exceeding $75,000 in value.
And in any event, it is Del Vecchio who bears the
burden of proving that the case is properly in
federal court, as it is he who is trying to
invoke federal jurisdiction. McNutt, 298 U.S. at
189; Gilman, 104 F.3d at 1421. But his theory of
jurisdiction fares no better than that of the
defendants. Originally, Del Vecchio took an
approach similar to theirs. In his motion in
opposition to summary judgment, Del Vecchio
listed two types of damages: the shortfall
between the cash value guaranteed by the policy
and the actual cash value (which between 1994 and
1997 amounted to $4,879) and the failure of the
defendants to pay interest on the policy at fair
market rate (no figure is given for this amount,
but given the small dollar amounts at stake, it
cannot be substantial). Being very generous on
the up-side, Del Vecchio's total damages under
this theory hover somewhere between $5,000 and
$10,000--plainly far short of what he needs.

In his supplemental brief on appeal, Del
Vecchio abandons this theory for an entirely
different tack. He now asserts (perhaps in
partial response to some of the exchanges that
occurred at oral argument) that his compensatory
damages amount to a mere $600, which represents
the amount of the cash value lost between the
years 1988 and 1996. On top of that modest
figure, he claims that a punitive damage award in
the (coincidental?) amount of $75,000 (a ratio of
125 to 1) would be appropriate here. With all due
respect, these new claims strike us as bordering
on the farcical. (Del Vecchio also asserts that
he plans to represent a class of 200,000 policy
holders who have been similarly defrauded, each
of whom would be entitled to a similarly large
punitive damage award. The total recovery that
Del Vecchio expects is the enormous sum of $1.5
billion.)

Although it is not unheard of for Indiana
courts to uphold punitive damage awards that
exceed the underlying compensatory awards by
several multiples, a multiplier of 125 lies at
the very outer edge of awards that have been
allowed. As we explained in Anthony, 75 F.3d at
317-18, where we faced a similar situation: "[A]
punitive damage recovery in such a large multiple
of a compensatory recovery as [125] times
stretches the normal ratio, and would face

certain remittitur. Considering the nature of their claim and the amount of the potential compensatory damage awards on that claim, a punitive damages recovery if rendered for the amount necessary to exceed $[75,000] would be excessive." (Citations omitted.) Lenient though it is, the St. Paul test for satisfying the jurisdictional amount has some outer limits, and we conclude that Del Vecchio has exceeded them. His individual claim does not meet the requirement of sec. 1332 that more than $75,000 must be at stake, and this is not a case in which he can rely on the potential claims of his putative class members.

III

While we are not unsympathetic to the waste of effort represented by a case that has been fully litigated in the wrong court, both the Supreme Court and we ourselves have noted time and again that subject matter jurisdiction is a fundamental limitation on the power of a federal court to act. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998); Indiana Gas Co. v. Home Insurance Co., 141 F.3d 314, 318 (7th Cir. 1998). Once it appears, as it has here, that subject matter jurisdiction is lacking, only one path lies open to us. We hereby Vacate the order dismissing the action on the merits and Remand the case with orders to dismiss it for want of federal subject matter jurisdiction.