**Sean M. GLOVER, Plaintiff–Appellant,**

**v.**

**PREMIERBANK, Defendant–Appellee.**

**No. 02–2853.**

United States Court of Appeals, Seventh Circuit.

Submitted Feb. 24, 2003.[*]

Decided Feb. 25, 2003.

Rehearing Denied April 1, 2003.

Before BAUER, CUDAHY, and KANNE, Circuit Judges.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

## ORDER

Sean M. Glover, proceeding pro se, brought this action against PremierBank, alleging that it has unlawfully gained control of funds from his great-grandfather's estate. The district court granted the bank's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) because Glover failed to establish diversity jurisdiction. Specifically, the court concluded that he failed to demonstrate that more than $75,000 was in controversy, *see* 28 U.S.C. § 1332, and the court could see no other basis for federal jurisdiction. We affirm.

Glover's great-grandfather, Arthur "A.J." Glover, died in 1949. According to the terms of his will and its two codicils, most of the estate went into a trust for A.J.'s wife that terminated when she died in 1966. At that time the trust residue was divided to benefit three of A.J.'s children and the wife of a fourth. Two of the children, Wilbur Glover (plaintiff's grandfather) and Myra Bostwick, received cash. The remainder funded separate trusts established by the two codicils, one benefiting son Robert B. Glover and the other daughter-in-law Fay Glenn Glover, the wife of Arthur Glover, Jr. The 1966 value of the Robert B. Glover Trust assets was $23,924, and the trust assets in the Fay Glenn Glover Trust at that time totaled $11,424. By the time of Robert's death in 1984, First National Bank, PremierBank's predecessor, had been appointed trustee for the two trusts. Robert's trust terminated with his death, and after its assets were liquidated the cash was distributed equally—$6,710 each—among Wilbur, Myra and the Fay Glenn Glover Trust. Fay is still alive, and PremierBank remains trustee of the trust created for her benefit.

As best we can tell from his complaint, Glover alleges that PremierBank has no right to retain the assets of the Fay Glenn Glover Trust; later submissions clarify that he also alleges misconduct in the 1984 distribution of the assets of the Robert B. Glover Trust. Characterizing himself as the "survivor" of A.J.'s estate, Glover maintains that he is entitled to the assets administered by PremierBank.

PremierBank supported its Rule 12(b)(1) motion with an affidavit from a bank trust officer and accompanying exhibits detailing the history of A.J.'s estate and the Fay Glenn Glover Trust. The trust officer, who oversees the Fay Glenn Glover Trust, valued its assets at $24,949 on December 21, 2001, and reported total distributions of $20,516 to Fay Glenn Glover over the lifetime of the trust. PremierBank later submitted the trust officer's supplemental affidavit with receipts and releases demonstrating that Glover's grandfather had received his share of the Robert B. Glover Trust residue in 1984. Glover responded with a 1949 inventory that he reads as valuing the entirety of his great-grandfather's property at over $113,000. He also asserted federal-question jurisdiction under 15 U.S.C. § 687f(b), which imposes liability for breaches of fiduciary duty by persons involved in the management of a small business investment company. And he filed a "complaint for conversion" alleging that in 1950 PremierBank (or its chairman James Schafer, who was named in the complaint but never made part of the caption or served with the complaint and summons) wrongfully converted to its own use savings bonds, stocks and Holstein cows then worth over $65,000 (as valued in copies from the inventory of A.J.'s property). The district court concluded that Glover had no claim to his great-grandfather's entire estate and that his "complaint for conversion" was "inadequate on its face" because any applicable statute of limitations would have expired.

■ On appeal Glover maintains that his suit was improperly dismissed both because more than $75,000 is in controversy and because his complaint presents a federal question. *See* 28 U.S.C. §§ 1331, 1332. Although Glover never established that he and PremierBank were citizens of different states (Glover explained only that he "resides" in New York), PremierBank (a Wisconsin corporation with its principal place of business in Wisconsin) assumed complete diversity existed and challenged only the amount in controversy. In response to PremierBank's Rule 12(b)(1) motion, Glover was required to establish the amount in controversy with competent proof—i.e., "proof to a reasonable probability that jurisdiction exists." *See, e.g., Middle Tenn. News Co. v. Charnel of Cincinnati, Inc.,* 250 F.3d 1077, 1081 (7th Cir.2001) (citation and internal quotations omitted). We review the district court's resolution of factual issues pertaining to jurisdiction only for abuse of discretion. *Sapperstein v. Hager,* 188 F.3d 852, 856 (7th Cir.1999).

Glover advances several theories in an attempt to support diversity jurisdiction. He points to the inventory of his great-grandfather's estate in 1949, and he maintains that his complaint challenges both the bank's handling of the Fay Glenn Glover Trust, and its 1984 distribution of the Robert B. Glover Trust. He also now claims punitive damages for what he calls "breach of trust," and points to the value of the assets allegedly converted by PremierBank in 1950.

The 1949 inventory of A.J.'s property is inadequate because Glover submitted nothing suggesting he might somehow be entitled to *all* of his great-grandfather's property. PremierBank currently administers only the Fay Glenn Glover Trust, which holds $24,949. And as the bank points out without contradiction, even if the distributions throughout the lifetime of the trust are added to that amount, the total is still only $45,465.

Nor does Glover's challenge to the distribution of the residue of the Robert B. Glover Trust get him close to the $75,000 threshold. He provided nothing that calls into question the bank's assertion (supported by court documents and signed releases) that Wilbur, Myra, and the Fay Glenn Glover Trust received only $6,710 each. Even if Glover could somehow claim an interest in his grandfather Wilbur's share, adding that amount to all of the money that could possibly be at issue from the Fay Glenn Glover trust would not total even $53,000.

■ Similarly, Glover's claim for punitive damages adds nothing because he has demonstrated no basis for his entitlement to such an award. When available, punitive damages must be considered in the amount-in-controversy calculation. *See Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). When a plaintiff relies on punitive damages to satisfy the amount-in-controversy requirement, we first ask if punitive damages are recoverable under state law. If so, subject matter jurisdiction exists unless it appears beyond a legal certainty that the plaintiff could not recover the jurisdictional amount. *Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 978 (7th Cir.2000). Wisconsin law authorizes punitive damages when a defendant acts "maliciously" or "in an intentional disregard" of a plaintiff's rights. *See* Wis. Stat. Ann. § 895.85(3). But even if we assume Glover has some claim for what he is calling "breach of trust" (leaving aside our curiosity about what duty owed to Glover PremierBank could possibly have breached), he provided no factual basis even remotely suggesting malicious intent, so his purported claim to punitive damages is unavailing. *See Anthony v. Sec. Pac. Fin. Servs., Inc.,* 75

F.3d 311, 316 (7th Cir.1996) (when subject matter jurisdiction is challenged, plaintiff relying on punitive damages must present "facts sufficient to satisfy the legal standard for punitive damages"). And any additional amount PremierBank allegedly "converted" in 1950 does not increase the amount in controversy because a complaint for "conversion" that occurred over 50 years ago is untimely and frivolous on its face. *See* Wis. Stat. Ann. § 893.51(1) (six-year statute of limitations for conversion); *see also Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n*, 892 F.2d 575, 577 (7th Cir.1989); *cf. Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir.2002).

Finally, Glover's purported bases of federal question jurisdiction (for instance, that a breach of trust "by definition" violates federal law and that the State of Wisconsin violated the Contracts Clause of the Constitution) are patently frivolous.

AFFIRMED.