In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2114

CAROLYN SMITH,

*Plaintiff-Appellant*,

*v.*

AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE COMPANY, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3743—**Joan Humphrey Lefkow**, *Judge*.

ARGUED JANUARY 13, 2003—DECIDED JULY 24, 2003

Before POSNER, KANNE, and DIANE P. WOOD, *Circuit Judges*.

DIANE P. WOOD, *Circuit Judge*. Carolyn Smith purchased life insurance policies for her three children from an agent selling insurance door-to-door for American General Life and Accident Insurance Company. When one of her children died of complications from sickle cell anemia, American General refused to issue the full $15,000 benefit that Smith anticipated receiving on her policy. Instead Smith received $7,500 (a portion of this amount was paid directly to the funeral home to which Smith assigned her claim) and was told that her original policy had lapsed and was substituted by a policy that carried higher

premiums and half the benefit. After retaining a lawyer to help her sort out the problem, Smith was eventually paid an additional $7,500 plus interest, thereby collecting the full $15,000 benefit under her original policy. She then sued American General in state court alleging common law and statutory fraud in addition to vexatious delay under the Illinois Insurance Code, hoping to recover $36.54 in excess premium payments, $2,500 that she paid her lawyer to recover the second half of her benefits, attorneys fees for her statutory fraud and vexatious delay claims, and over $1,000,000 in punitive damages.

American General removed the case to federal court, and on cross-motions for summary judgment the district court granted partial summary judgment to American General. Eager to appeal that decision to this court, Smith passed up the opportunity to try her surviving fraud claims and stipulated that she could not establish damages at trial on what remained of her claims, despite the district court's suggestion to the contrary. The case was then dismissed on the court's motion, and Smith brought this timely appeal.

At oral argument we expressed concern that Smith's claim might not meet the amount in controversy requirement that is necessary to support federal jurisdiction under 28 U.S.C. § 1332 (a) and asked the parties to file supplemental briefs on this question. After reviewing these filings we have concluded that the district court lacked jurisdiction over Smith's claim. We therefore vacate the district court's judgment and remand the case with instructions to remand the case to state court. See, *e.g.*, *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659, 663 (7th Cir. 1982), abrogated on other grounds by *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001).

**I**

In March 1991, Smith purchased life insurance for her three children, including her son Isaac J. Smith, from a door-to-door agent selling policies for American General. Isaac's policy required Smith to pay monthly premiums of $9.85; it promised a $15,000 death benefit, payable to Carolyn Smith, in the event of his death. Every month Smith faithfully paid the premium on the policy to an American General agent who came to her home, collected the payment, and marked a receipt book that the company gave her to keep track of her monthly payments. In September 1992, Smith cancelled the policy for another of her sons, D'Right, but she continued to pay monthly premiums to insure her daughter Tynisa and Isaac. The premiums for these two policies together totaled $18.79 per month. At some time in 1996, American General's agents stopped marking Smith's receipt book with each monthly payment and instead issued a computerized receipt from a hand-held device that its agents carried. Smith detected a problem with the first computerized receipt, which indicated that her total premium was $23.18 rather than $18.79, and did not include a policy number. She expressed concern to American General's agent, who explained that her original policy on Isaac had lapsed for non-payment and that the new, higher premium was for a second policy that Smith supposedly purchased in August 1994. Smith asked to see a copy of her application for the new policy, which a different agent showed her on a subsequent visit to her home. According to Smith, that policy contained her forged signature, but she was not able to get a copy of the policy from American General. Despite concerns over the accuracy of her monthly premium charges and which policy was in effect, Smith dutifully paid the revised monthly premiums on Isaac's policy until her son's death in September 1997.

When Isaac died Smith tendered a claim to American General for the $15,000 death benefit that she believed she was owed under her policy. This is when Smith first learned that the new policy carried only a $7,500 benefit, despite the increase in monthly premiums. Smith retained a lawyer to help her recover the difference, and this lawyer sent a letter to American General on her behalf. In response to Smith's lawyer's letter, American General explained that Smith's policy on Isaac had lapsed and that the current benefit was paid out under her new policy. At that time American General asked for any information that would support a different conclusion, but it received no response from Smith or her lawyer. Nearly one year later, a second lawyer retained by Smith (the record is silent on why she changed lawyers) responded to American General's letter by sending copies of handwritten and computerized receipts as proof that Smith's original policy never lapsed, and seeking full payment of the $15,000 benefit. In this new round of correspondence Smith's lawyer urged American General to settle his client's claim or face a lawsuit over its conduct. That letter and supporting documentation were then referred to the proper department within American General for investigation, and handwriting exemplars were requested to establish that Isaac himself had not applied for the second policy. (A second application was produced by American General containing what appears to be Isaac Smith's forged signature. That application contains a spelling mistake in Isaac's name, as well as a mistake in his social security number.) Smith's lawyer supplied American General with a copy of a car loan application that Isaac filed shortly before his death, and within four days of its receipt of this handwriting sample, American General paid Smith $7,500 plus interest "to reflect the amount [of insurance] originally applied for."

Smith's claim against American General is not for the balance of her insurance policy—that much she has al-

ready received. Instead she seeks to recover for the delay in payment under her original insurance policy, the excess premiums that were never refunded, and the costs she incurred in securing complete payment. Beyond these costs Smith seeks punitive damages for what to her seems like an inexcusable delay in payment under the policy, as well as a major scam on American General's part to defraud unsophisticated customers out of their benefits. Since Smith's complaint seeks relief solely on the basis of Illinois law, federal jurisdiction exists, if at all, if the requirements of 28 U.S.C. § 1332 are met.

## II

This court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists before proceeding to the merits in any case, even where, as here, neither the parties nor the district court has questioned the existence of such jurisdiction. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *Ross*, 693 F.2d at 660. To invoke the federal courts' diversity jurisdiction, the parties must establish both complete diversity and that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Complete diversity is not a problem because Smith is a citizen of Illinois and American General is a Tennessee corporation with its principal place of business in Tennessee.

The amount in controversy presents a much more difficult question. Based on language in the Supreme Court's decision in *St. Paul Mercury*, the federal courts have adopted what is known as the "legal certainty" test to assess whether the amount in controversy in cases originating in federal court satisfies § 1332's requirements. See *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 957 (7th Cir. 1998); 14B Charles A. Wright,

Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 3702, at 17 (3d ed. 1998). Under the legal certainty test, courts will find federal jurisdiction on the basis of the plaintiff's complaint unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury*, 303 U.S. at 289. But a different rule governs cases filed in state court and subsequently removed to federal court by a defendant. In removed cases, the amount alleged in the plaintiff's complaint, if sufficient to meet the jurisdictional requirements of § 1332, is presumed correct on the assumption that a plaintiff would not fabricate the amount in controversy to meet the federal diversity jurisdiction requirements and then file her suit in state court relying on the defendant to remove the case to federal court. *Id.* at 290-91. In keeping with this presumption, our court has adopted a rule that the removing party must establish any disputed aspect of diversity jurisdiction by offering "evidence which proves to a reasonable probability that jurisdiction exists." *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997) (citation and internal quotation marks omitted).

In this case, at first blush, it looks as if the amount could not possibly be met: apart from a request for $1,000,000 in punitive damages, Smith wants $36.54 (excess premium benefits) + $2,500 (legal fees to recover wrongfully withheld benefits), for a total of $2,536.54. Thus, whether more than $75,000 is truly in controversy depends on how we must assess the demand for punitive damages. With this in mind, we ordered the parties to file supplemental briefs on the question of diversity jurisdiction, specifically asking that they address "whether the amount in controversy exceeds $75,000.00 in light of *DelVecchio v. Conseco, Inc.*, 230 F.3d 974 (7th Cir. 2000)." In *DelVecchio*, we dismissed a class action lawsuit for lack of federal jurisdiction where the named plaintiff sought a

mere $600 in compensatory damages and $75,000 (coincidentally) in punitive damages. *Id.* at 979-80. Such a disparate ratio of compensatory to punitive damages struck this court as "bordering on the farcical," and we found it highly unlikely that a state court in Indiana (whose law applied) would permit such an award. *Id.* at 980.

In their supplemental briefs, both Smith and American General have urged this court to find that diversity jurisdiction was proper. For her part, Smith seeks to avoid replication of costs already incurred and asks for closure in what has certainly been an unpleasant chapter in her life. American General too wishes to remain in federal court; after all, it is American General that removed this case in the first place. But the parties must do more than show why they prefer to remain in federal court. They must establish that jurisdiction lies in our court for resolution of their dispute. That they have not done.

As a technical matter, it is American General's burden to show that Smith's complaint states a claim for more than $75,000. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) (removing party bears burden of demonstrating that amount in controversy requirement is satisfied by presenting "*evidence* of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt") (emphasis in original); *Chase*, 110 F.3d at 427 (same). In considering this question, however, we do not limit ourselves to American General's supplemental brief, but instead address the arguments that both parties have made in support of federal jurisdiction.

In its effort to salvage federal jurisdiction, American General makes every observation but the inevitable—that without punitive damages, Smith's complaint seeks well below the minimum amount in controversy requirement of more than $75,000. Among its arguments are

several that we find particularly specious, including that Smith has herself admitted to seeking in excess of $75,000, the district court agreed that the complaint states a claim for in excess of $75,000, and there was no improper manipulation of the federal court's jurisdiction because Smith sought punitive damages in state court and it was American General that removed the case to federal court. These are all proper observations; however, they all amount in the end to statements that the parties have agreed on jurisdiction or that no one examined the question before—arguments that are not sufficient to support federal jurisdiction.

As we have already noted, Smith, American General, and the district judge may all agree that the complaint seeks in excess of $75,000, but this court still has an independent obligation to make sure that they are correct. *Ross*, 693 F.2d at 660. Furthermore, the record below does not indicate that the district court considered the amount-in-controversy question posed to the parties by this court, or whether it addressed the question whether punitive damages in such a large amount were unattainable to a legal certainty. Even if these questions had been considered by the district judge, it would be entirely proper for this court to consider the question on appeal. *Id.*

And while federal courts are suspicious of claims filed in federal court that attempt to circumvent the amount in controversy requirements for diversity jurisdiction by seeking excessive and unrealistic punitive damages, see *e.g., Anthony v. Security Pacific Fin. Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996), this does not prove the converse. We know of no case that says that when a complaint is filed in state court seeking unrealistic punitive damages, it may properly be removed to state court because the plaintiff did not intend an end-run around the jurisdictional requirements of § 1332(a). In making

this argument, American General misconstrues the holding of *DelVecchio* and would have us read that case as applying only in situations where there was some intentional manipulation of punitive damages by a plaintiff eager to file her complaint in federal court. But we read *DelVecchio* as saying much more: when a federal court is convinced to a legal certainty that punitive damages that form a necessary component of the amount-in-controversy requirement cannot be obtained, the court must dismiss the case for want of jurisdiction. 230 F.3d at 980. The Supreme Court's recent decision in *State Farm Mutual Automobile Insurance Co. v. Campbell,* ___U.S. ___, 123 S.Ct. 1513, 1526 (2003), reinforces our view that we must take a realistic look at the size of the punitive damages demanded.

Turning to the damages sought in Smith's complaint, American General reasons that as the removing party, it was entitled to read the complaint as easily stating the requisite $75,000+ in damages based on the relief Smith sought. In making this argument, American General calls our attention to the following aspects of Smith's complaint: first, she sought compensatory damages as part of her consumer and statutory fraud claims "in the amount of the excess premium she paid; in the reduced benefit originally paid by American General; and by being forced to retain attorneys to collect the benefit to which she was entitled"; second, Smith filed her complaint in the Law Division of the Circuit Court of Cook County, Illinois, which "strongly indicated that she was seeking compensatory damages of at least $30,000"; third, Smith sought $25,000 as a statutory penalty under her vexatious delay claim; and finally, Smith sought in excess of $1,000,000 in punitive damages. Although American General points out that the complaint is silent on the amount of excess premiums that Smith paid and her prelitigation attorney's fees, it acknowledges that the reduced benefit was in the amount of $7,500.

There are several problems with American General's argument, starting with its claim that Smith sought no less than $30,000 in damages because otherwise she would not have filed in the circuit court's law division, which sets a $30,000 floor on damages. We fail to see how this supports American General's position that the significantly higher amount in controversy required for federal court was properly alleged. The same problem (*i.e.*, possible failure to meet the required jurisdictional amount) appears to have existed in the circuit court, and we can assume that if the case had stayed in state court, the circuit court would probably have made its own inquiry into its jurisdiction. The other, obvious problem, is that the circuit court's $30,000 floor on damages is well below the $75,000 floor set by § 1332(a).

The more fundamental problem with American General's position is that it essentially pleads ignorance with regard to the refund for overpaid premiums that Smith sought since her complaint failed to specify an actual amount. We confronted an identical argument in *Ross*, and there this court refused to allow a removing insurance company to argue that it thought the jurisdictional amount was met where it had actual knowledge that the amount at issue fell well below the statutory minimum. 693 F.2d at 662. While it is true that Smith's complaint failed to specify the amount of overpayment she sought, that figure was within American General's knowledge. American General's agents issued receipts for Smith's monthly payments (and by this time Smith's lawyer had supplied American General with copies of all of those receipts) and the company knew the original monthly premium that her first policy carried. With this information in hand, the simple arithmetic that American General needed to do in order to calculate how much Smith sought to recover would not stump an elementary school student, and comes nowhere near $75,000.

We turn now to the remaining damages that Smith's complaint sought: a $25,000 statutory penalty for vexatious delay in payment of an insurance benefit under Section 155 of the Illinois Insurance Code, which allows a party that experienced "unreasonable delay in settling a claim" to recover attorneys fees and punitive damages of no more than $25,000 if the court also finds that the delay was "vexatious and unreasonable," 215 ILL. COMP. STAT. 5/515 (2000), and over $1,000,000 in punitive damages. As a general rule, at the jurisdictional stage, courts do not conduct an inquiry into the merits beyond verifying that the claim is not brought "solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 U.S. 678, 682-83 (1946); see also *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1317 (7th Cir. 1997) (quoting *Bell*, 327 U.S. at 682-83). Here, the statutory claim for $25,000 for vexatious delay in payment of an insurance policy was not raised "solely for the purpose of obtaining jurisdiction," but it is hard to see how the claim is not frivolous. As the district court found, American General did not delay at all in paying Smith her insurance benefits once it had all of the information that it needed to verify that she continued to make payments under her first policy and that the application that it had for a new policy was filed with a forged signature. Four days after the company had all of the information that it needed to reach this conclusion, American General paid Smith the balance of her benefits plus interest. Thus the delay in payment occurred because Smith (through her lawyers) waited nearly one year between her first contact with American General and her second effort to secure payment. All but four days of the time lapse was thus attributable to Smith, and could in no way be termed either vexatious or otherwise blameworthy on American General's part. See *e.g.*, *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citing *Green v. Int'l Ins. Co.*, 605

N.E.2d 1125, 1129 (Ill. App. Ct. 1992) (no vexatious de-lay where delay in payment results from "*bona fide* dispute about coverage")). So, like the district court, we fail to see how Smith could prevail on what looks like a frivolous claim for $25,000 under 215 ILL. COMP. STAT. 5/155 (2000). We add that even if, giving her every benefit of the doubt, this claim could be considered for purposes of the juris-dictional amount, it would still take her only up to $27,536.54, and she would need to make a non-frivolous allegation that she was entitled to at least $47,463.47 in general punitive damages to establish that more than $75,000 was in controversy.

Since, however, we see no way that Smith would be entitled to $25,000 for vexatious delay in payment of her claim, she must show that she could recover a minimum of $72,463.47 in punitive damages in order to exceed the $75,000 floor. This brings us back to the problem that we tackled in *DelVecchio*. American General tries to distinguish *DelVecchio* by noting that according to the company's calculations, the ratio of punitive to compen-satory damages in this case is "at the very least, 2.31 to 1 and, therefore, not beyond legal certainty" that Smith could recover in excess of the jurisdictional minimum. Aside from the fact that we have ruled out an award of up to $25,000 for vexatious delay under the Insurance Code, which in essence reduces the ratio of punitive to compensatory damages in this case to 29 to 1, American General is wide of the mark in advancing this argument. In *DelVecchio*, we were unwilling to find federal jurisdic-tion in a case where the amount in controversy consisted of punitive and compensatory damages at a ratio of 121 to 1 because such an award is at the outer limits of what the Indiana courts permit in terms of damages awards. 230 F.3d at 980.

This is not to say that in all cases where punitive dam-ages form a significant part of the jurisdictional amount

in controversy a federal court must assure itself that such damages are proportional to compensatory damages. The point of *DelVecchio* was that the likelihood of an Indiana court awarding such damages was so slim that we were satisfied that the jurisdictional amount could not be met in that case. *Id*. In reaching that conclusion we did not intimate that courts must train their sight on ratios or numbers where punitive damages play a part of the jurisdictional minimum; the fundamental inquiry, after all, is whether it appears beyond a legal certainty that the punitive damages will not be awarded under the law that governs the case. See *Anthony*, 75 F.3d at 315; *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211-12 (7th Cir. 1995). Where the ratio of punitive to compensatory damages is as imbalanced as it was in *DelVecchio*, a court must look closely to see whether federal jurisdiction exists. *Anthony*, 75 F.3d at 315. But it is possible to find jurisdiction lacking for other reasons, and, as in our case, if it appears to a legal certainty that the claim for the requisite level of punitive damages cannot be sustained, then regardless of how much the plaintiff seeks in punitive damages relative to compensatory damages, she cannot count the punitive damages towards the jurisdictional minimum. *Bell*, 327 U.S. at 682-83. Even evaluating this claim at the time American General removed the case to federal court—a time when the state fraud claims were still a part of the case—we find no basis in Illinois law to support such a large award of punitive damages.

Neither party has focused on the possibility that Smith's initial fraud claims against American General might have convinced an Illinois court to award her approximately $72,500 in punitive damages for the problems she experienced before she made her first demand for payment. Instead, in Smith's supplemental brief addressing jurisdiction, she has suggested that we should include

the attorney's fees that she would receive for her statutory and common law fraud claims, as well as for her vexatious delay claim under the Illinois Insurance Code. We have already explained why her efforts to recover attorney's fees and punitive damages for vexatious delay fail; therefore we need only consider Smith's argument that the running tally of damages in this case includes at least $25,000 in attorney's fees for her statutory and common law fraud counts. Smith readily confesses that this $25,000 figure is merely an approximation of her actual attorney's fees to pursue these claims because the parties did not undertake discovery on this question and the current record is silent on how much this case has cost Smith's lawyer to pursue. But this is a problem that we could easily cure by remanding the case for limited discovery on the question of attorney's fees. We would pursue such a route were there not a more fundamental problem with relying on attorney's fees to meet the amount in controversy requirement. This case is controlled by *Gardynski-Leschuck v. Ford Motor Co.*, which held that post-filing attorney's fees cannot count toward the amount in controversy requirement because federal jurisdiction exists, if at all, at the time of filing. 142 F.3d 955, 958 (7th Cir. 1998). See also *Hart*, 253 F.3d at 273 ("The amount *in controversy* is whatever is required to satisfy the plaintiff's demand, in full, on the date suit begins.") (emphasis in original). This rule is not only controlling in this case, but it makes good sense. As sympathetic as we are to Carolyn Smith's situation, we see no reason to allow a plaintiff bringing state law claims into federal court on the basis of actual damages that total a mere $2,534.56 simply because she has run up a large bill with her lawyer to recover that sum. To do so would be to defy Congress's intent to limit federal diversity jurisdiction to cases in which the amount in controversy exceeds $75,000.

### III

Carolyn Smith urges that we find federal jurisdiction properly lies in her case in part because a remand to state court will impose significant new costs that may in the end make pursuit of her claims impossible. While we are not unsympathetic to her situation, and we cannot understand why American General has not at the very least voluntarily refunded Smith's excess premiums of $36.54, we are simply not in a position to create federal jurisdiction where it is otherwise lacking. American General has not shown that more than $75,000 was in controversy in this case at the time of removal, and thus we VACATE the district court's order and REMAND the case with instructions that the district court remand Smith's case to state court.

A true Copy:

      Teste:

                                    _____
                                    *Clerk of the United States Court of Appeals for the Seventh Circuit*