# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-3944 & 04-1358

RICHARD SHARIF and ROSEE TORRES et al.,

*Plaintiffs-Appellants, Cross-Appellees,*

*v.*

WELLNESS INTERNATIONAL NETWORK, LTD.,
a Texas corporation, a/k/a WIN, WIN NETWORK, INC.,
RALPH OATS, CATHY OATS, and SHERI MATTHEWS,

*Defendants-Appellees, Cross-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 02 C 3047 & 02 C 5801—**Samuel Der-Yeghiayan**, *Judge.*

ARGUED JUNE 9, 2004—DECIDED JULY 21, 2004

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. This case concerns two procedural decisions issued by District Judge Samuel Der-Yeghiayan. The first arises from the court's dismissal of a suit for want of prosecution after plaintiffs' counsel failed to appear for a hearing date. Second, the court denied Wellness International Network's motion to compel arbitration. We consolidated both appeals.

This suit stems from distributorship contracts that the plaintiffs signed with Wellness International Network (WIN).[1] The suit claims that WIN was only nominally engaged in the business of selling health and wellness products and that they were actually running an illegal pyramid scheme. The suit alleged violations of RICO, federal securities law, and the Illinois Consumer Fraud Act as well as violations of the criminal law giving rise to an alleged right to void the contracts as against public policy. An amended complaint was filed in January 2003 in the Northern District of Illinois.

Shortly thereafter, in March 2003, the plaintiffs filed another lawsuit against the same defendants alleging substantially similar claims. This suit was, however, styled a class action. *Budner v. Murnighan*, No. 03 C 2100 (N.D. Ill.). In *Budner*, WIN filed a motion to compel arbitration based on contractual arbitration provisions which provided:

> ANY DISPUTE OR CLAIM ARISING UNDER OR IN CONNECTION WITH THE AGREEMENT OR WITH RESPECT TO THE BUSINESS RELATIONSHIP ESTABLISHED BY THIS AGREEMENT SHALL BE RESOLVED EITHER BY BINDING ARBITRATION CONDUCTED IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION OR BY A COURT OF COMPETENT JURISDICTION . . . .

District Judge James Moran granted WIN's motion, 2003 WL 21544236 (N.D. Ill. June 9, 2003). The *Budner* plaintiffs did not appeal; and they proceeded to file a demand for arbitration with the American Arbitration Association.

---

[1] Plaintiffs also brought suit against WIN's general partner WIN Network, Inc. and three of WIN's principals: Ralph Oats, Cathy Oats, and Sheri Matthews. For convenience, we will refer to the defendants collectively as WIN.

Returning to the present case, WIN filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1406(a), alleging improper venue. The motions were fully briefed before District Judge Blanche Manning. Significant for our purposes, Judge Manning granted plaintiffs' motions for two short extensions of time to file their briefs.

Before the motions were ruled on, in August 2003, the case was transferred to Judge Der-Yeghiayan. Upon receiving the case, the court "apparently" set an initial status date for October 20, 2003. We say apparently because there is only a docket entry to reflect this. There is no order in the district court file and no docket number assigned to that entry on the docket sheet. Moreover, plaintiffs' counsel insists that he never received notice of the hearing. For whatever reason, plaintiffs' counsel, as well as counsel for one of the defendants, did not appear. That day, the court checked to see what motions were outstanding and set a status date of February 2, 2004. Also on October 20, WIN filed a motion to compel arbitration. The motion was identical to the one presented to Judge Moran; and WIN included a copy of Judge Moran's order granting the motion.

Three days later, on October 23, the district court held a hearing on WIN's motion to compel arbitration. Counsel for all parties were present. At the hearing, nothing was said about counsels' absence 3 days earlier. Judge Der-Yeghiayan orally denied WIN's motion. The court later wrote "defendant already had before this court a motion to dismiss this action for lack of venue pursuant to 28 U.S.C. § 1406(a)" wherein the "defendant presented to this court an agreement between the parties that provided that proper venue for the matter was in the state of Texas and that arbitration shall take place in the state of Texas." Accordingly, the district court found that the motion to compel arbitration was "superfluous" because "defendant's pending motion to dismiss for improper venue already included the arbitration

clause in Texas." The court ruled that it "did not deny the Defendant's motion to compel arbitration in Texas on the merits, but ruled that it would not grant such a motion at that time because the defendant already had a motion to dismiss before this court and a ruling on the motion was scheduled which would have been dispositive of the issue on the merits." WIN filed an interlocutory appeal.

At the same hearing, the court issued a minute order which noted "Status hearing set for 02/02/04 to stand." On November 13, 2003, the parties were before the court pursuant to WIN's motion to stay proceedings in the district court while it pursued their appeal. Once again, counsel for all parties were present. Judge Der-Yeghiayan called the motion and immediately set a briefing schedule, calling for plaintiffs to file a response on November 26 and defendants to reply a week later. At the end of the day, Judge Der-Yeghiayan said, "[A]nd we will be back, next status, December 4, '03 at 9:00 o'clock." Judge Der-Yeghiayan did issue a minute order reflecting the briefing schedule. Both plaintiffs and defendants filed their respective papers in accordance with the court's stated schedule.

On December 4, 2003, Judge Der-Yeghiayan held the status hearing and denied WIN's motion to stay proceedings. Significantly, plaintiffs' counsel was not present. The transcript from December 4 reflects no comment or inquiry by the court or defense counsel regarding plaintiffs' counsel's absence.

Four days later the court issued a minute order dismissing the case without prejudice for want of prosecution due to counsel's failure to attend the December 4 hearing or to later appear in court to explain the absence. The court also noted that plaintiffs' counsel had failed to appear for an initial status call (the one on October 20) when the case had been transferred to him. Finally, Judge Der-Yeghiayan emphasized that plaintiffs had obtained two extensions of time from Judge Manning.

Plaintiffs filed a motion to vacate the dismissal order a week later. The motion, which both attorneys at counsel's firm verified, stated that they had not received any order setting the December 4 status date and had heard nothing at the November 13th hearing regarding such a date. It further noted that they had not received the order dismissing the suit for want of prosecution but had only learned of it when their client (who had originally filed the suit *pro se*) had received the order and called them about the suit's dismissal. Judge Der-Yeghiayan denied the motion. He emphasized that even if it was true that counsel did not hear the setting of the December 4 date, "This court expects all counsel to heed such oral notifications and pay attention at status calls in order to enable the status calls to be a productive means of moving the case forward. Counsel should not expect to rely on a subsequent minute order to keep counsel apprized of the status of the case."

Plaintiffs then filed a combined verified motion to reconsider the denial of the motion to vacate and a second motion to vacate the dismissal order, along with a supporting memorandum. Counsel explained the two extensions they received from Judge Manning. They also emphasized that the result of dismissal could be that the statute of limitations might time-bar some of plaintiffs' claims. The day after the motion was filed, Judge Der-Yeghiayan denied it. He noted that counsel failed to explain which claims would be barred and why. He stated, moreover, that dismissal "was the result of Plaintiffs' own lack of diligence and thus even if some claims may be barred by the statute of limitations we would deny the instant motions."

On January 16, 2004, plaintiffs filed another verified motion to submit additional evidence proffering evidence that defense counsel, too, had not heard the court set the December 4 hearing date at the November 13 session. The court denied this motion as well without a hearing. Plaintiffs appealed. As noted above, we consolidated plaintiffs' appeal

of the dismissal for want of prosecution with WIN's appeal of the court's denial of its motion to compel arbitration. We will address each in turn.

We begin with Judge Der-Yeghiayan's dismissal for lack of prosecution. We review such a dismissal only to determine if the district court abused its discretion. *Aura Lamp & Lighting v. Int'l Trading Corp.*, 325 F.3d 903, 907-08 (7th Cir. 2003). "The district judge should be presumed to have acted reasonably, and reversal is warranted therefore only if it is plain that the dismissal was a mistake or that the judge did not consider factors essential to the exercise of sound discretion." *Ball v. City of Chicago*, 2 F.3d 752, 755 (7th Cir. 1993).

We have repeatedly held that a district court ordinarily may not dismiss a case for want of prosecution without first providing an explicit warning to the plaintiff. *See Aura Lamp*, 325 F.3d at 908; *Bolt v. Loy*, 227 F.3d 854, 856 (7th Cir. 2000); *FEC v. Salvi*, 205 F.3d 1015, 108-19 (7th Cir. 2000); *Ball*, 2 F.3d at 760. However, the rule was adopted specifically for situations in which claims are dismissed *with* prejudice. *Ball*, 2 F.3d at 753; *Bolt*, 227 F.3d at 855. Because a plaintiff may refile the same suit on the same claim, dismissal without prejudice does not constitute such a harsh sanction and does not foreclose a determination on the merits. In such a circumstance, an explicit warning is not normally required.

That is not, however, the situation here. Although Judge Der-Yeghiayan ostensibly dismissed plaintiffs' claims without prejudice, the effect may be the same as a dismissal with prejudice—plaintiffs may not have the ability to refile. Indeed, plaintiffs notified the court that there may be statute of limitations problems if the case is dismissed for lack of prosecution. Nevertheless, without even considering the impact of its holding, the court dismissed the case. To do so, we hold, constitutes an abuse of discretion.

In defense of Judge Der-Yeghiayan's actions, WIN argues that the plaintiffs failed to provide any details to the court on which claims would be barred or how they would be barred. Significantly, however, Judge Der-Yeghiayan's order emphasizes that "even if some claims may be barred by the statute of limitation" he "would deny the instant motions." What is explicit is that it would have made no difference if plaintiffs had provided such details.

We also emphasize that although Judge Der-Yeghiayan had the authority to dismiss for lack of prosecution, we question its application here. First, plaintiffs' counsel had actively participated in the case. Indeed, only weeks before the case was dismissed counsel successfully defeated WIN's motion to stay proceedings. And there is no suggestion that counsel needlessly delayed the case. Indeed, Judge Manning had specifically authorized the delays (including one for surgery) relied on in Judge Der-Yeghiayan's order. Finally, we emphasize that contacting counsel here, certainly a common courtesy, would not have been too great a burden. Judge Der-Yeghiayan's clerk, another member of his staff, or even defense counsel could easily have placed a telephone call to plaintiffs' counsel. Also, when presented with verified claims that counsel failed to receive a court order, the prudent course would be to ensure that the court has counsel's proper address before taking the drastic sanction of dismissing the suit.

In sum, in merely setting aside plaintiffs' concerns regarding statute of limitations and imposing what potentially could be an extremely harsh sanction, Judge Der-Yeghiayan abused his discretion and plaintiffs are entitled to have the dismissal order vacated.

We next turn to WIN's cross-appeal and hold that Judge Der-Yeghiayan erred in not granting WIN's motion to compel arbitration. We review a denial of a motion to compel arbitration *de novo. Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). At the outset, we emphasize plaintiffs do not dispute that each plaintiff signed a contract

that included an arbitration clause and that the arbitration clause encompasses the plaintiffs' claims. We also note that Judge Moran granted a virtually identical motion.

Nevertheless, without even deciding whether the arbitration clause was applicable, the court denied WIN's motion on the grounds that the motion was superfluous with a venue motion already before the court. In other words, the court refused to consider the merits of the motion to compel arbitration because of the pending venue challenge. The Federal Arbitration Act, however, states that if the parties have an arbitration agreement and the asserted claims are within its scope, the motion to compel cannot be denied. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). As the Fifth Circuit has noted:

> An application for arbitration by either party under section 3 requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement.

*Texaco Exploration v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (internal citations and quotation marks omitted). The motion to compel arbitration, rather than being superfluous, had to be addressed by the court. In dismissing the motion, Judge Der-Yeghiayan erred.

Significantly, plaintiffs make no attempt to support the trial court's ruling on the grounds Judge Der-Yeghiayan relied on. Rather, they argue that WIN waived its motion to compel by waiting 18 months after the suit was filed, 3½ months after Judge Moran entered his decision on the motion to compel arbitration, and filing four motions to dismiss before filing the motion to compel. Plaintiffs contend, moreover, that the arbitration clause by its own terms does not apply to disputes involving claims of $100,000 or more

"inclusive of costs and attorneys' fees," which limitation precludes compelling this case to go to arbitration.

A contractual right to arbitrate may be waived expressly or implicitly, and a party that chooses a judicial forum for the resolution of a dispute is presumed to have waived its right to arbitrate. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 757 (7th Cir. 2002). Courts must examine the totality of the circumstances and "determine whether based on all the circumstances, the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Id.* (internal citation omitted). Although several factors may be considered in determining waiver, diligence or the lack thereof should weigh heavily in the decision—"did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?" *Id.* (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)).

Considering this standard, WIN did not waive its rights to arbitrate. Initially, plaintiffs were surely on notice that WIN was likely to demand arbitration, since it had successfully done so in *Budner*. Second, it is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss. *See Creative Solutions Group, Inc. v. Pentzer Corp.*, 252 F.3d 28, 33 (1st Cir. 2001); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995); *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2nd Cir. 1985); *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984). Likewise, a motion to transfer venue does not constitute waiver of the right to arbitrate. *See Walker v. Countrywide Credit Indus. Inc.*, 2004 WL 246406, at \*4 (N.D. Tex. Jan. 15, 2004).

*Cabinetree*, relied on by plaintiffs, does not lead to a different result. There, the plaintiff filed suit in state court. Instead of filing a motion to stay pending arbitration, the

defendant instead removed the case to federal court, "manifest[ing] an intention to resolve the dispute through the processes of the federal court." *Id.* at 389. In *Cabinetree*, moreover, the defendant had propounded discovery and received over 2000 documents in response. *Id.* at 391. Furthermore, the defendant waited until 5 months before trial before invoking the arbitration clause. Here, in contrast, WIN did not remove the case to federal court, no discovery had taken place, and there was no trial date. All that had occurred was a motion to dismiss under Rule 12(b)(6) and 28 U.S.C. § 1406(a).

Plaintiffs next claim that they are not bound by the arbitration clause because the contract provides that if a claim is worth more than $100,000, then it is not subject to arbitration. Plaintiffs argue that because WIN has not proved with "legal certainty" that plaintiffs' claims are for less than $100,000, arbitration is improper. WIN admits, however, that only those plaintiffs with claims less than $100,000 must be compelled to arbitrate. According to the complaint, the majority of plaintiffs have such claims. Indeed, the plaintiffs plead that 8 of the 11 claims are for damages of less than $100,000.

Nevertheless, plaintiffs argue that the "combined" loss of plaintiffs exceeds $100,000. However, arbitration claims of multiple parties cannot be consolidated. *Gov't of the U.S. v. Boeing Co.*, 998 F.2d 68, 69 (2nd Cir. 1993); *Del E. Webb Constr. v. Richardson Hosp. Auth.*, 823 F.2d 145, 150 (5th Cir. 1987). Therefore, there is no justification for aggregating them for purposes of determining the "monetary damage" claim. Plaintiffs' argument that we should adopt the rules for determining the amount in controversy in diversity is equally unpersuasive. Even were we to adopt such a rule, the combined losses of multiple plaintiffs cannot be aggregated. *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir. 2000). Thus, plaintiffs cannot aggregate their claims to exceed the $100,000 ceiling.

For the foregoing reasons, we VACATE the dismissal for lack of prosecution. Further, we REVERSE the court's denial of WIN's motion to compel arbitration and REMAND with instructions to order arbitration on those claims subject to arbitration.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*